Francis SINGLEY, Appellant,

v.

UNITED STATES, Appellee.

Nos. 84–863, 84–864.

District of Columbia Court of Appeals.

Argued June 1, 1988.
Decided Oct. 12, 1988.

Michael L. Spekter, Washington, D.C., appointed by the court, for appellant.

Roy W. McLeese III, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., at the time the brief was filed, and Michael W. Farrell and Elizabeth Trosman, Asst.

U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, BELSON and STEADMAN, Associate Judges.

BELSON, Associate Judge:

In these consolidated appeals, appellant challenges two unrelated convictions of armed robbery, D.C.Code §§ 22–2901, –3202 (1981 & 1987 Supp.) returned at two separate trials. We reject as unsubstantiated all but one of appellant's several assignments of error. With respect to the trial resulting in the first conviction, however, we conclude that after the trial court was apprised of the possibility of a conflict of interest on the part of defense counsel, it treated the matter as an actual conflict and in a manner that adversely affected appellant's representation. Accordingly, appellant must be afforded a new trial with respect to his first conviction. We affirm the judgment of conviction returned at the second trial.

I

Appellant stood trial on one charge of armed robbery in April 1984, and on a second unrelated charge of armed robbery in June 1984. During appellant's first trial (resulting in Appeal No. 84–863), the complainant, Marcelle Erwin, testified that a group of men including appellant confronted him in March 1983, threatened him regarding a criminal charge he had made against their friend and demanded Erwin's money, and that appellant pulled out a gun and stuck it in Erwin's back. Following a trial that was unremarkable but for the emergence of a conflict of interest issue, the jury convicted appellant of armed robbery. During appellant's second trial (resulting in Appeal No. 84–864), the complainant, Alicia Lowrey, testified that a group of men including appellant approached her and demanded her purse, and that in the course of the robbery appellant pointed a gun in her face. The jury found appellant guilty of armed robbery.

On the second day of the first trial the prosecutor, Amy S. Berman, raised a preliminary matter concerning appellant's trial counsel, Eugene M. Bond. The following exchange occurred:

THE COURT: Ms. Berman, what is your problem?

MS. BERMAN: Your Honor, I believe yesterday counsel for Mr. Singley came very close to, if not actually violated the canon of professional ethics in the courtroom. And what I would like to point to is his questioning, his cross-examination yesterday, which the Court might remember, of Marcelle Erwin. He concluded that questioning with a line of questions which were quite effective, in which he said to Mr. Erwin, "Didn't your lawyer tell you that you should do anything you could to help yourself?" And he said, "Yes." And there were a number of questions about the advice given by his lawyer.[1]

Your Honor, Mr. Bond was that lawyer, and Mr. Bond had to withdraw from Mr. Erwin's case because of the conflict between Mr. Erwin and Mr. Singley.

---

1. The specific cross-examination of Erwin to which the prosecutor made reference occurred as follows:

BY MR. BOND:

Q. You told the ladies and gentlemen of the jury here that you have a pending case that's styled something like assault with intent to commit robbery while armed of a senior citizen; isn't that correct?
A. Yes.
Q. You have a lawyer in that case; don't you?
A. Yes.
Q. Have you talked to your lawyer?
A. Yes.
Q. Did you tell your lawyer that you were going to testify today?

A. No.
Q. You didn't tell him that?
A. No.
Q. But your lawyer gave you advice that since you have a case pending anything that you can do to help yourself out you should do; isn't that correct?
A. Yes.
Q. He told you that; didn't he?
A. (Head indication "yes.")
Q. Including come down here and testify; isn't that correct?
A. No.
Q. But he did tell you anything that can help you you should go along with?
A. Yes.

And Mr. Bond was relying on conversations which he only knew about by virtue of his prior representation of Mr. Erwin from which he withdrew due to a conflict. . . .

THE COURT: Mr. Bond. .

MR. BOND: May I address that?

First of all, I do not recognize having represented Mr. Erwin, but if I had, I think I have an obligation to withdraw from the case altogether.

.       .       .       .       .

If I represented him at any time I have an obligation, I think, to withdraw from this case completely. I did not recognize him.

The prosecutor proffered a court jacket from Erwin's pending case, noted that Bond's name was crossed out on the jacket, and offered Erwin for *voir dire* by the trial court. Bond examined the trial jacket, agreed that it indicated that he had at one time represented Erwin, and stated that "[s]omeone should have brought that to my attention earlier if they knew." At that point the prosecutor replied as follows:

MS. BERMAN: Your Honor, how would we have known? Mr. Bond is the person who should have known. Mr. Erwin was not in a position to bring it to the Court's attention. He came upstairs and he said, "You know, Ms. Berman, those questions made me mad." I said, "Why?" He said, "Because Mr. Bond was my lawyer, and that's how he knew about that."

And I checked the records and found that was correct, and there was no one who had a duty to bring that to the Court's attention except for Mr. Bond.

And Mr. Erwin told me that Mr. Bond withdrew from his case and told him he was withdrawing from the case because of his representation of Francis Singley. Then he turned around and used it against Mr. Erwin in court. I will proffer this to the Court.

The prosecutor again asked if the trial court wished to hear from Mr. Erwin, and Bond stated his belief that "[i]f I represented him I have a duty to withdraw from this case. And I, in good faith to this Court, did not recognize Mr. Erwin as being a

client." The matter concluded, significantly, with the court addressing Bond as follows:

THE COURT: I think the records speak for themselves. You were counsel. I thought that the line of questioning itself was certainly right on the brink, even if you hadn't been the lawyer that represented him at the time.

*. . . I will instruct the jury to disregard all those, and you will not be allowed to argue it.*

MR. BOND: I think I should withdraw from the case.

THE COURT: Not in the midst of trial. You have gone this far, and I think I can take care of the rest of it. But you will not be able to argue that. All right.

(Emphasis supplied.) After consideration of another preliminary matter, Bond again objected to continuing, stating for the record that he thought he should withdraw. The jury was not present during any of the preceding discussion. The record does not disclose whether appellant himself was present or not during the discussion. It is clear, however, that the trial court never addressed appellant.

Before sending the jury out to deliberate, the court instructed it, *inter alia*, as follows:

You are hereby instructed that the questions posed to Mr. Marcelle Erwin yesterday regarding his conversations with his lawyer, and the advice his lawyer gave, and the answers given by the witness have been stricken from the record. You are to disregard both the questions and those answers.

Thus, the trial court directed the jury to ignore the effort on the part of defense counsel to impeach the complaining witness. Counsel had suggested that, by his testimony against appellant, Erwin might be helping himself in a pending criminal case in which Erwin was charged with assault on an elderly person. In addition, consistent with the trial court's ruling, defense counsel did not advance such a theory in closing argument.

## II

On appeal, appellant's principal challenge is to the trial court's handling of the possible conflict of interest on the part of defense counsel that the prosecutor brought to the attention of the court.[2] By way of response, the government advances a two-part argument: (1) that the fact that appellant's trial counsel once represented Erwin did not necessitate a factual inquiry; and (2) that, even if the trial court erred in failing to conduct an inquiry, the error would not justify reversal because no actual conflict of interest existed. We are not persuaded by the government's arguments. First, we conclude on the facts before us that the trial court's failure to conduct an inquiry constituted an error. Second, it is not necessary for this court, or for the trial court on remand, to inquire further in order to determine whether an actual conflict did exist.[3] The record discloses that the trial court treated counsel's prior representation of the government witness as an actual conflict and, to appellant's disadvantage, struck a portion of Erwin's testimony. This necessitates reversal, with remand for a new trial.

The sixth amendment to the Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The right to counsel is essential to a fair trial. *Argersinger v. Hamlin*, 407 U.S. 25, 32, 92 S.Ct. 2006, 2010, 32 L.Ed.2d 530 (1972); *United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 667, 66 L.Ed.2d 564 (1981). Furthermore, "the right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). "Upon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused. . . . The trial court should protect the right of an accused to have the assistance of counsel." *Glasser v. United States*, 315 U.S. 60, 71, 62 S.Ct. 457, 465, 86 L.Ed. 680 (1942).

The Supreme Court has stated that "[w]here a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 citing *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); and *Holloway v. Arkansas*, 435 U.S. 475, 481, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426 (1978). Thus, where an actual conflict of interest is

---

**2.** We treat summarily the additional arguments appellant raises on appeal. First, appellant argues that insufficient evidence exists to support his convictions. In appeal No. 84–864, appellant argues that, in her initial description of appellant to police, victim Alicia Lowery "did not mention that the individual who displayed a gun at the time of her robbery on January 25, 1983, had scars on his face and a large gap in the front of his mouth." Brief of appellant at 11. On this basis, appellant urges that his conviction be overturned on the basis of insufficiency of evidence. This argument is wholly without merit as it ignores the fact that Ms. Lowery, both in a line-up and at trial, positively identified appellant as the gunman. *See, e.g., Malloy v. United States*, 483 A.2d 678, 680 (D.C. 1984) (single witness' positive identification of defendant sufficient to support conviction); *Patterson v. United States*, 479 A.2d 335, 338 (D.C. 1984) (single witness' positive identification of defendant sufficient to support conviction despite witness' misdescription of color of defendant's coat).

In appeal No. 84–863, appellant argues that "insufficient evidence was presented concerning the presence of a gun during the commission of the crime." Brief of appellant at 10. This argument also is without merit. Erwin, the victim-complainant, testified that when he refused to surrender his money, appellant reached into his coat and pulled out a "little gun" that "looked like a little .22." This testimony, viewed in the light most favorable to the government, is sufficient to support appellant's conviction. *E.g., Boyd v. United States*, 473 A.2d 828, 832 (D.C. 1984) ("[C]omplainant testified that appellant was armed with a knife; the trial court credited her testimony, as did the jury. This satisfies us in a case such as this, where credibility was the handmaiden of sufficiency.").

Appellant also raises issues in No. 84–863 concerning joinder and severance. Because there is no indication that on remand appellant will be tried with another defendant or on more than one count, we need only state that we have reviewed appellant's contentions and find neither error in joinder nor abuse of discretion in denial of severance.

**3.** In connection with our reference to proceedings on remand, we are assuming that Mr. Bond will not represent appellant. If he does, a plenary inquiry will be necessary.

found, "counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties." *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1983).

In keeping with Supreme Court precedent, this court has acknowledged that

the importance of ensuring that defense counsel is not subject to any conflict of interest which might dilute loyalty to the accused has been long and consistently recognized: "[t]he right to counsel guaranteed by the Constitution contemplates the services of an attorney devoted solely to interests of his client."

*Douglas v. United States,* 488 A.2d 121, 136 (D.C.1985), citing *Von Moltke v. Gillies,* 332 U.S. 708, 725, 68 S.Ct. 316, 324, 92 L.Ed. 309 (1948). For this reason, we have stated: "[t]o protect this right to conflict-free counsel, the trial court has an affirmative 'duty to inquire' into the effectiveness of counsel whenever 'the *possibility* of a conflict' becomes apparent before or during trial. [*Wood v. Georgia,* 450 U.S. 261, 272, 101 S.Ct. 1097, 1104, 67 L.Ed.2d 220 (1981)] (emphasis in original)." *Douglas, supra,* 488 A.2d at 136.

The facts in the instant case were sufficient to alert the trial court to "the *possibility* of a conflict," and thus gave rise to a duty on the part of the court to inquire further. *Wood, supra,* 450 U.S. at 272, 101 S.Ct. at 1104; *Douglas, supra,* 488 A.2d at 136; *see Fitzgerald v. United States,* 530 A.2d 1129, 1134 (D.C.1987). The prosecutor explained to the trial court that she understood Erwin to say that Bond had specifically withdrawn from representing Erwin because of Bond's participation in appellant's upcoming trial. In seeming contrast, defense counsel denied even recognizing Erwin as a former client. Further, in denying that he recognized Erwin during cross-examination, Bond implied that his questioning of Erwin was not the product of information obtained on the basis of the prior attorney-client relationship. Yet the prosecutor understood Erwin to say that defense counsel, in cross-examining Erwin, relied upon information learned in conversations between Bond and Erwin, information which Bond had only by virtue of his prior representation.

In any event, it is clear that the trial court was apprised of differing versions of the relationship between Erwin and Bond but did not test either party's recollection in an effort to reconcile the statements and determine the facts in order to gauge whether an actual conflict of interest existed at the time of appellant's trial and, if so, whether it had any potential for prejudice to appellant.

Because the trial court never inquired of Erwin, we are unable to determine what representations Erwin actually made to the prosecutor; all that is before us is the prosecutor's account of what Erwin told her. Indeed, the trial court declined the government's suggestion that it question Erwin. Such an inquiry could well have led to a determination that no actual conflict existed. If Bond had indeed represented Erwin, the nature of representation and its conclusion might have been such that it did not adversely affect Bond's ability to represent appellant Singley with undivided loyalty. On the other hand, there could have been aspects of that representation that in some fashion limited or compromised Bond's ability to serve as appellant's counsel with unreserved loyalty. Bond's inability to cross-examine Erwin on relevant matters because of privileged communications between them would be one such way. Because Erwin was not called upon to inform the court of the relevant details of his representation by Bond, and because Bond was not given the opportunity to retrieve his records and refresh his recollection about the matter, the trial court did not satisfy itself that Bond could devote himself solely to appellant's interests.

■ Nothing in the record suggests that appellant waived the right to conflict-free representation. While it is not entirely clear whether appellant was aware of the discussion between the court and the lawyers concerning conflict of interest, it is clear that the trial court never discussed the matter with appellant, advised him of the situation, or explored whether appellant desired to proceed with trial despite

the charge of conflict of interest leveled against his attorney and any effect that conflict might have had on counsel's ability to cross-examine the complaining witness.[4] *See Fitzgerald, supra,* 530 A.2d at 1134–35; *Holloway v. Arkansas,* 435 U.S. 475, 483 n. 5, 98 S.Ct. 1173, 1178 n. 5, 55 L.Ed.2d 426 (1978) ("a defendant may waive his right to the assistance of an attorney unhindered by a conflict of interests.") (dictum); *but see Wheat v. United States,* —— U.S. ——, ——, 108 S.Ct. 1692, 1699, 100 L.Ed.2d 140 (1988) (trial court "must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.").

■ In light of the foregoing, the trial court's determination that it could "take care of the rest of it" was premature. The trial court should have ascertained whether Bond was or could have been influenced in his representation of Singley by his relationship with Erwin, or, to put it another way, whether Bond's previous representation of Erwin had any possible adverse impact on Bond's representation of appellant Singley. If it did, the court should have explored whether appellant wished to make an informed waiver of his right to conflict-free counsel. *Fitzgerald, supra,*

530 A.2d at 1134; *Douglas, supra,* 488 A.2d at 139. On the other hand, an inquiry might have persuaded the court that no actual conflict of interest existed, in which case the court would have been under no obligation to "take care of" the matter. Under the circumstances, and consistent with our observation in *Douglas* that "the trial court has an affirmative 'duty to inquire' into the effectiveness of counsel whenever the *'possibility* of a conflict' becomes apparent," 488 A.2d at 136 (citing *Wood*), we conclude that the trial court's failure to inquire in the instant case constituted error.

In its brief, the government argues that "even if the trial court had erred in failing to conduct an inquiry, such an error would justify a reversal of appellant's conviction only if appellant established that there was in fact an actual conflict of interest." Brief of appellee at 21. The government then cites a number of federal appellate cases holding that there was no actual conflict on facts somewhat similar to those of the instant case. There is, however, a very important distinction between the cases cited by the government and the instant case: in each of those cases a factual inquiry of some sort had been made prior to appellate review. Thus, the reviewing courts were supplied with sufficient information to determine the precise scope of the alleged conflict and its possible effect on the trial below.[5] In contrast, in the instant case,

---

**4.** We note that despite appellant's conviction in the first trial, which included the conflict of interest issue discussed here, appellant chose to continue his representation by the same defense counsel in his second trial on unrelated charges of armed robbery (Appeal No. 84–864). This second trial, in which appellant was also found guilty, is untainted by even the possibility of conflict of interest and appellant's conviction remains undisturbed by our decision concerning the first trial.

**5.** *E.g., Smith v. White,* 815 F.2d 1401, 1405 (11th Cir.1987) ("The federal magistrate ... conducted an evidentiary hearing [in which appellant] ... presented testimony and documentary evidence regarding his ineffective assistance of counsel claim in general and the conflict of interest issue in particular."); *Nance v. Benson,* 794 F.2d 1325, 1327 (8th Cir.1986) ("The magistrate found that appellant had not pointed to any conduct by Griggs which would indicate

that the attorney was representing the interests of the insurance company or its principals over Nance's interests. Therefore, he concluded, Nance had failed to demonstrate an actual conflict in representation."); *Barham v. United States,* 724 F.2d 1529, 1532 (11th Cir.1984) ("The only record before this court consists of the transcript from the Magistrate's hearing on this petition. During that hearing the appellant testified that after his second trial Mr. Edwards, his attorney, told him that he knew that Wayman's identification of appellant was shaky but that he could not bring it out at trial because this knowledge was gleaned under circumstances protected by the attorney-client privilege."); *United States v. Jeffers,* 520 F.2d 1256, 1263 & n. 11 (7th Cir.1975) ("As a matter of procedure we first note that both defense counsel and the trial judge properly addressed the issue as soon as it arose.... [Counsel] approached the bench and informed the court of the prior representation

neither the trial court nor this court can determine—on the record created to date— whether an actual conflict of interest existed. Ordinarily, in such a circumstance, we would remand for a hearing in order to determine whether an actual conflict did in fact exist. The instant case, however, does not require remand for such a determination.

■ In the case at bar, the trial court, having heard from counsel regarding the possibility of conflict of interest, addressed defense counsel as follows:

> I thought that the line of questioning itself was certainly right on the brink, even if you hadn't been the lawyer that represented [Erwin] at the time.
> ... I will instruct the jury to disregard all those [questions and answers], and you will not be allowed to argue it.

The trial court did in fact direct the jury not to consider the testimony in question, and Mr. Bond not to argue to the jury that Erwin's testimony regarding appellant's culpability might be tainted by Erwin's hope of favorable treatment by the government in connection with his pending criminal case. As a result, Singley was not the beneficiary of bias cross-examination of a type that defense lawyers routinely make when the complaining witness like Erwin is himself awaiting trial on other charges. The trial court, in effect, removed from the trial information which it presumed was the product of Bond's prior representation of Erwin. Thus, the trial court, through its own actions, treated the conflict of interest issue as if an actual conflict of interest did in fact exist. This occurrence at trial makes it unnecessary for this court, or the trial court on remand, to pass on the question of whether an actual conflict did exist. Whether or not an actual conflict did exist, the trial court proceeded as if such a conflict existed and took affirmative steps to "cure" it. What transpired was the equivalent of what would have happened if a trial counsel, burdened with an actual conflict of

interest, had forgone certain actions in defense of his client because of the conflict. In effect, therefore, an actual conflict of interest infected appellant's trial.

■ ■ The Supreme Court has stated that "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Cuyler v. Sullivan*, 446 U.S. 335, 349–50, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980). *See Fitzgerald, supra*, 530 A.2d at 1141. Here, a problem that was quickly given the status of an actual conflict did affect the adequacy of his representation. First, the jury was instructed to disregard testimony suggesting possible bias on the part of the accusing witness. *See Francis v. Franklin*, 471 U.S. 307, 325 n. 9, 105 S.Ct. 1965, 1977 n. 9, 85 L.Ed.2d 344 (1985) (the law assumes that jurors follow their instructions). Second, trial counsel was denied the opportunity to argue bias to the jury. Under these circumstances, we are not permitted " 'to indulge in nice calculations as to the amount of prejudice' attributable to the conflict." *Cuyler, supra*, 335 U.S. at 349, 100 S.Ct. at 1719 (citing *Glasser v. United States*, 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942). Rather, appellant must be afforded a new trial in Appeal No. 84–863.

*No. 84–863 is reversed and remanded for new trial, No. 84–864 is affirmed.*

---

problem as soon as he learned that Berry would testify. At this point, it became the duty of the district judge to seek out the facts surrounding the alleged conflict and to determine whether counsel's continued representation of his clients would be consonant with the strictures of the Sixth Amendment.... Here the trial judge was fully apprised of the extent of the conflict....").