James D. WITHERSPOON, Appellant,

v.

UNITED STATES, Appellee.

No. 84–71.

District of Columbia Court of Appeals.

Submitted Oct. 11, 1988.
Decided April 12, 1989.

---

Stacy J. Canan, appointed by the court, for *appellant*.

Kathryn A. Myerscough, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty. at the time the brief was filed, Michael W. Farrell, and Elizabeth Trosman, Asst. U.S. Attys., were on the brief, for appellee.

Before ROGERS, Chief Judge,* and FERREN and SCHWELB, Associate Judges.

ROGERS, Chief Judge:

Appellant James D. Witherspoon appeals his conviction of a single count of possession of heroin, D.C.Code § 33–541(a)(1) (1988 Repl.), on the grounds that he was denied his Sixth Amendment right to counsel where the trial judge failed to conduct inquiries into whether defense counsel had an actual conflict of interest with appellant and had adequately prepared appellant's case.

In *Singley v. United States*, 548 A.2d 780 (D.C.1988), the court stated that when the trial judge fails to conduct an inquiry after being apprised of the possibility of a conflict of interest on the part of defense counsel, this court ordinarily will remand for a hearing in order to determine whether an actual conflict did in fact exist. *Id.* at 786. We must do so here. Defense counsel moved to withdraw from the case after apprising the trial judge that Deputy Bar Counsel had recommended withdrawal on the basis of defense counsel's ethical concerns about his ability adequately to represent appellant. Since the trial judge did not conduct an inquiry to determine if counsel's conflict would adversely affect his ability to represent appellant a remand is required so that such an inquiry can be made. Appellant's other Sixth Amendment contention, that the trial judge failed to conduct the necessary inquiry to determine whether counsel had adequately prepared appellant's case, is meritless.

## I.

On November 16, 1983, appellant's case was the oldest case on the trial judge's

---

* Judge Rogers was an Associate Judge of the court at the time this case was submitted for decision. Her status changed to Chief Judge on November 1, 1988.

calendar and was scheduled to go to trial. Defense counsel advised the judge that appellant wanted a continuance because there were witnesses appellant thought defense counsel should know about who had not been subpoenaed. Defense counsel informed the judge that appellant was unhappy with his representation and wanted either to retain counsel or to have another attorney appointed to represent him. Defense counsel admitted that he did not know who the witnesses were or how to contact them. The judge asked appellant whether or not he had been aware of these witnesses on September 15, 1983, when his counsel had announced that he was ready for trial. Appellant responded that he had been aware of the witnesses on September 15, but claimed that when he had told his counsel about them counsel had simply given him a business card and told him to get in touch. Appellant further claimed that his daily efforts to telephone counsel proved unavailing and he had not spoken with counsel until the day before trial. Defense counsel informed the judge that he had an answering service and had not received any message from appellant. Appellant then told the judge that Melvin Burton, Esquire, was going to handle his case. The judge observed that everyone involved had had a long time to inform the court about appellant's dissatisfaction and the change in representation, and that he was not going to grant a continuance since the case was ready to go to trial.

When court reconvened in the afternoon, defense counsel renewed his motion for a continuance on the ground that appellant wanted to retain Mr. Burton and Mr. Burton had confirmed that he wanted to enter his appearance. Mr. Burton appeared to explain that appellant was familiar with his thoroughness of investigation and preparation for trial, and wished him to represent him.[1] The judge denied the continuance. The judge also rejected defense counsel's suggestion that the hearing on appellant's

motion to suppress proceed but the trial be continued because he had a calendar to run and he would not "let people play games with that."

The next day, following the motion hearing, defense counsel advised the judge at the bench that he wanted to withdraw from the case. Counsel explained cryptically that, as a result of an incident with prospective witnesses in the witness room, he had conferred with the Deputy Bar Counsel who had advised him to ask for leave to withdraw. Counsel apprised the judge that Deputy Bar Counsel told him to base his motion principally on Disciplinary Rule 2–110(C)(1)(d), which provides for permissive withdrawal where the client's "conduct renders it unreasonably difficult for the lawyer to carry out his employment effectively." CODE OF PROFESSIONAL RESPONSIBILITY DR 2–110(C)(1)(d) (1979). Counsel also informed the judge that Deputy Bar Counsel told him to rely on Disciplinary Rule 2–110(C)(1)(c), which provides for permissive withdrawal where the client "[i]nsists that the lawyer pursue a course of conduct that is prohibited under the Disciplinary Rules." *Id.* DR 2–110(C)(1)(c). Counsel stated: "I can't tell the Court what it was that happened out there but I sure don't want to go forward with this case in its present posture." The judge acknowledged that counsel was in a "tough spot," but denied the motion, stating that "[counsel had] done the right thing ... [b]ut I'm not going to let Mr. Witherspoon out of this court, just not going to do it." Defense counsel advised the judge that he was not in a position to call witnesses appellant would want him to call and that without those witnesses appellant's testimony "may be rendered silly almost." The judge repeated that appellant was not going to run the court, and said he did not think a continuance was an "absolute necessity."

---

1. Most of Mr. Burton's explanation focused on the nature of his pretrial preparation and on his past success in representing appellant. In response to the judge's concern that appellant was being dilatory, Mr. Burton stated that he had known appellant for ten years and that he had never indicated "let's take advantage of the system." The judge commented that he had an "inner feeling that somebody is playing with the system."

## II.

The Sixth Amendment guarantee of assistance of counsel for an accused's defense requires "representation that is free from conflicts of interest." *Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981) (*citing Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Holloway v. Arkansas,* 435 U.S. 475, 481, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426 (1978)); *see also Singley, supra,* 548 A.2d at 783. To protect the defendant's right to counsel that is free of conflicts of interest, "the trial court has an affirmative 'duty to inquire' into the effectiveness of counsel whenever 'the *possibility* of a conflict' becomes apparent before or during trial." *Douglas v. United States,* 488 A.2d 121, 136 (D.C.1985) (quoting *Wood, supra,* 450 U.S. at 272, 101 S.Ct. at 1104 (emphasis in original)). An appellant who " 'shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief.' " *Singley, supra,* 548 A.2d at 786 (quoting *Cuyler, supra,* 446 U.S. at 349–50, 100 S.Ct. at 1718–19).

Appellant's objection to the absence of any meaningful inquiry is well taken in light of our recent decision in *Singley, supra.* In *Singley,* the prosecutor informed the trial judge on the second day of trial that the defense counsel had previously represented a government witness in a civil action against the defendant arising out of the same incident for which the defendant was on trial. *Id.* at 781–82. The prosecutor stated that when counsel impeached the witness during cross-examination he relied on information that he had obtained from his prior representation of the witness. The trial judge examined the court jacket from the witness' pending civil case against the defendant and found that counsel had at one time represented the witness. Counsel stated that he did not recognize the witness, implying that his questioning of the witness was not the result of information obtained in the prior attorney-client relationship, but conceded that if he had represented the witness he should withdraw from the case. The trial judge would not allow counsel to withdraw, however, in the middle of the trial. This court held that the trial judge erred in failing to inquire into the possible conflict of interest:

> [I]t is clear that the trial court was apprised of differing versions of the relationship between [the witness] and [defense counsel] but did not test either party's recollection in an effort to reconcile the statements and determine the facts in order to gauge whether an actual conflict of interest existed at the time of appellant's trial and, if so, whether it had any potential for prejudice to appellant.

*Id.* at 784. However, because the record disclosed that the judge treated counsel's prior representation of the government witness as an actual conflict of interest and, to the defendant's disadvantage, instructed the jury to ignore counsel's impeachment of the witness, the court concluded that no further inquiry was required and the conviction must be reversed and the case remanded for a new trial. *Id.* at 786.

The circumstances in the instant case differ from *Singley* since the potential conflict stems from appellant's demand that certain witnesses be called in his defense. The trial judge might have suspected, under all the circumstances, that appellant sought to manufacture a conflict for the purpose of obtaining a further continuance of his trial. After both appellant and his counsel had been ready for trial two months earlier, appellant claimed for the first time on the November 16, 1983, trial date that he needed a continuance because his counsel had not interviewed or subpoenaed his witnesses. When the trial judge inquired, appellant and defense counsel gave irreconcilable accounts. Appellant stated that he had called his counsel "daily," apparently for two months, to provide him with the names and addresses of his witnesses. Defense counsel reported that he had received no messages on his answering service. The judge was in a position to observe the demeanor of the two men, and to recognize that defense counsel spoke as an officer of the court while appellant was, in view of his five prior convictions, probably facing a prison term if con-

victed. Moreover, if appellant needed the witnesses in question for his defense, the judge understandably could wonder at his readiness for trial two months earlier when he had not mentioned their absence.

Defense counsel's motion to withdraw on the following day arose from the problem of the witnesses whom appellant now wanted to present and whose supposed unavailability was the basis for his request for a continuance. One of the Disciplinary Rules which defense counsel invoked on the advice of Deputy Bar Counsel provides for permissive withdrawal where a client insists that the lawyer "pursue a course of conduct which is prohibited under the Disciplinary Rules." DR 2–110(C)(1)(c). Given what had gone before, the trial judge might well have suspected that the conflict had been created by appellant's demand that defense counsel assist him in presenting perjured testimony by these witnesses, whom defense counsel had apparently interviewed in the interim. If he permitted defense counsel to withdraw, the judge would in effect be rewarding appellant, for he would have to grant him the very continuance which he had denied on the day before. Nevertheless, assuming the trial judge's instincts were correct, he was obligated to make more of an inquiry than he did.

Defense counsel advised the trial judge that he wished to withdraw because of ethical concerns that might present a conflict of interest with his client. Although defense counsel did not disclose the details underlying his motion to withdraw, counsel told the trial judge that he was unsure whether he "could be reasonably effective [in representing appellant] without taking chances on having to make some moral decisions that I didn't know that I could make properly." He stated that he had consulted with Deputy Bar Counsel who had advised him to withdraw from the case,

and cited the disciplinary rules that were implicated. Counsel further suggested to the judge that his continued representation of appellant could prejudicially affect appellant's own defense; specifically, counsel stated that "[b]y remaining in the case I think—feel that I'm going to have to be in a position to not call witnesses that he [appellant] would want me to call, but without those witnesses his testimony will be rendered—may be rendered silly almost." These circumstances were sufficient to alert the judge to the possibility of a conflict and to his attendant duty to conduct an inquiry to determine whether an actual conflict existed and its potential for prejudice to appellant.[2] *Id.* at 784 (citations omitted).

■ Where a defendant appears to be attempting to create a conflict and then manipulating it to his own ends, a new and significant factor is introduced. The need to protect against such manipulation may, and indeed ought to be, considered by a trial judge in deciding whether to grant the relief which the manipulation was designed to secure. In *Nix v. Whiteside,* 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986), the Supreme Court made clear that a defendant has no Sixth Amendment right to counsel who is willing to participate in the presentation of perjured testimony. *Id.* at 173–74, 106 S.Ct. at 998. The Code of Professional Responsibility precludes counsel from such involvement. CODE OF PROFESSIONAL RESPONSIBILITY DR 7–102(A)(4) (1979); *see also* STANDARDS FOR CRIMINAL JUSTICE Defense Function Standard 4–7.5(a) (1986). *Nix* expressly held that a " 'conflict' between a client's [illegal] proposal and counsel's ethical obligation would [not] give[ ] rise to a presumption that counsel's assistance was prejudicially ineffective." 475 U.S. at 176,

---

**2.** In order to avoid the prejudice to appellant which could arise when defense counsel explains the ethical considerations which underlie his motion to withdraw, the judge who presides at appellant's trial should be different from the judge who conducts the conflict inquiry. *Banks v. United States,* 516 A.2d 524, 529 (D.C.1986),

*cert. denied,* —— U.S. ——, 108 S.Ct. 485, 98 L.Ed.2d 483 (1987); *Butler v. United States,* 414 A.2d 844, 852–53 (D.C.1980) (en banc); *Thornton v. United States,* 357 A.2d 429, 434 (D.C.), *cert. denied,* 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976); *In re W.N.W.,* 343 A.2d 55, 58 (D.C.1975).

106 S.Ct. at 999.[3]

■ In the instant case, if the trial judge had made an explicit finding, after a sufficient inquiry, to the effect that the alleged conflict resulted from appellant's wish to avoid going to trial or to present perjured testimony, or both, then we could sustain his denial of the motion to withdraw. Often the failure of the trial judge to inquire into the basis for defense counsel's concern that he could not provide effective assistance to his client does not alone justify reversal of a criminal conviction. *See Fitzgerald v. United States,* 530 A.2d 1129, 1138 (D.C.1987); *Thornton, supra* note 2, 357 A.2d at 434. In the absence of an inquiry in the usual case a defendant must demonstrate on appeal that an actual conflict of interest adversely affected the adequacy of his representation to obtain a reversal. *Cuyler, supra,* 446 U.S. at 348–50, 100 S.Ct. at 1718–19; *Fitzgerald, supra,* 530 A.2d at 1138; *Thornton, supra* note 2, 357 A.2d at 429. The problem here is that, so far as we can determine, appellant may not even have been aware of his counsel's motion to withdraw. If he did know of it, he certainly was never offered the opportunity to give his side of the story.[4] Nothing in the record suggests that appellant waived his right to conflict-free representation.[5] *See Fitzgerald v. United States, supra* 530 A.2d 1129, 1134 (D.C.1987) (citing *Hollo-*

*way, supra,* 435 U.S. at 483 n. 5, 98 S.Ct. at 1178 n. 5); *Douglas, supra,* 488 A.2d at 137. Since the trial judge did not seek appellant's position on his counsel's motion, we do not know (as the judge probably did not) what the precise problem between client and counsel was, who the witnesses in question were, what they were going to say, and why counsel was unwilling to present their testimony. Lacking this information, and given the less than comprehensive character of the findings, we conclude that a remand is appropriate.[6] Further inquiry might not have provided much enlightenment, but it is not obvious that it would have been fruitless.

Therefore, notwithstanding *Nix,* the trial judge should have determined by inquiry of counsel and appellant whether appellant had been advised by his counsel of counsel's ethical responsibility not to present perjured testimony. If appellant did not waive his right to be represented by unconflicted counsel, the judge should have determined whether the conflict would adversely affect counsel's representation of appellant. Although *Nix* provides that a conflict between a client and counsel with respect to the presentation of perjured testimony presumptively does not adversely affect the adequacy of the client's representation, some counsel may not wish to be associated in any manner with the type of presentation of evidence permitted under

3. At the same time, the Court suggested that defense counsel should proceed cautiously in concluding that his client wishes to present perjured testimony. *Id.* 475 U.S. at 174, 106 S.Ct. at 998. *See United States v. Long,* 857 F.2d 436, 445 (8th Cir.1988) (defense counsel must have a firm factual basis for believing his client wishes to testify falsely before taking measures to prevent the presentation of perjured testimony).

4. To provide such an opportunity may present a delicate problem for the trial judge, who must take care before questioning a defendant whose counsel is at least momentarily on the other side of the issue and may be unable to advise the defendant in a meaningful way.

5. We need not decide whether there may be some conflicts so inherently prejudicial that a client cannot waive them.

6. In other cases the record on appeal has enabled this court to hold that an appellant's representation was adversely affected by counsel's

conflict. *See, e.g., Singley, supra,* 548 A.2d at 786 (appellant's representation was adversely affected where his attorney was unable to impeach credibility of complaining witness because attorney had previously represented the witness in civil action against the appellant based on the same incident for which the appellant was on trial); *Lewis v. United States,* 446 A.2d 837, 842 (D.C.1982) (appellant's representation was adversely affected where attorney did not argue appellant's presentence motion to withdraw plea because underlying facts of the motion were appellant's complaints against the attorney); *Fitzgerald, supra,* 530 A.2d at 1138–39 (appellant's representation was adversely affected by joint representation where attorney failed to develop and argue that government's evidence of constructive possession was stronger against codefendant than appellant); *McIver v. United States,* 280 A.2d 527, 530–31 (D.C.1971) (same).

the Code of Professional Responsibility. Such a preference, standing alone, will not rebut the presumption that counsel's representation is adequate, especially where, as here, the judge evidently believed that appellant's demands were manipulative. Accordingly, the trial judge should have inquired whether there was a reasonable possibility that defense counsel's personal conflict might impair his ability to represent appellant effectively in other aspects of the case, and if so, allowed counsel to withdraw.

## III.

◼ Appellant also contends that the trial judge erred in failing to conduct a proper *Monroe/Farrell*[7] inquiry in response to his pretrial claim of ineffective assistance of counsel based on counsel's inadequate pretrial preparation.[8] We disagree.

Counsel, who was appointed at arraignment, appeared with appellant at a status hearing on September 15, 1983, where he announced, without objection from appellant, that he was ready for trial. He had interviewed several defense witnesses, as well as at least one of the two new witnesses whom appellant wanted to subpoena. He also had contacted an expert witness and had interviewed at least four defense witnesses in the witness room before trial. Counsel had consulted with appellant on November 15, 1983, the day before trial began, and informed the judge that he had received no calls from appellant on his answering service between September 15 and November 15, 1983. He had filed a timely motion to suppress evidence and identification testimony and had argued the motion in a competent manner. Mr. Burton expressly stated that he was not representing to the court that defense counsel was un-

prepared, only that appellant preferred his method of preparation. Counsel also stated in connection with his motion to withdraw that only certain witnesses would be called on behalf of the defense for tactical or ethical reasons, and not because he was unprepared. From these circumstances the trial judge could properly conclude that appellant's desire for new counsel did not result from legitimate dissatisfaction with defense counsel but from a personal preference for Mr. Burton, an attorney with whom he had a long-standing relationship. *See Matthews v. United States*, 459 A.2d 1063, 1066 (D.C.1983) (clear and convincing evidence of competent representation).

Appellant had known about the two witnesses at the first trial date and was not specific when the trial judge inquired "which witnesses," stating only that they were present when appellant was arrested.[9] He also admitted that the witness whose address he knew could still be subpoenaed for trial. Defense counsel's statement that his answering service had received no messages from appellant provided an additional ground on which the trial judge could discredit appellant's complaints about his defense counsel. Furthermore, appellant had ample time before the second trial date to inform the court of his dissatisfaction with counsel and his desire to retain Mr. Burton. It is also clear that appellant's own conduct prevented his securing substitute counsel in advance of trial.[10] Likewise, appellant's conduct, not defense counsel's preparation, formed the basis of counsel's motion to withdraw.

◼ Accordingly, the case is remanded to the trial judge to determine whether the conflict between appellant and defense counsel adversely affected counsel's representation of appellant.[11]

---

7. *Farrell v. United States*, 391 A.2d 755 (D.C. 1978); *Monroe v. United States*, 389 A.2d 811 (D.C.), *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978).

8. Appellant *does not claim that the actual assistance rendered by counsel at trial was ineffective.*

9. Appellant *has provided no further information about these two witnesses in his brief on appeal.*

10. Mr. Burton stated that the only reason he had not attempted to enter his appearance earlier was because appellant had failed to comply with his requirements for representation.

11. Appellant's other contention, that the prosecutor improperly impeached him with a prior conviction where immediately following appellant's general denial of heroin possession, the prosecution asked appellant a question about his prior conviction for marihuana possession,

FERREN, Associate Judge, concurring in the result of Part II and otherwise concurring in the opinion of the court:

This case reflects a tug of war between the trial court's responsibility to bring to trial a case for which counsel and the defendant had announced they were ready two months earlier, and the defendant's new found desire for a continuance immediately before trial. The defendant claimed ineffectiveness of counsel and wanted a new lawyer to help him present additional witnesses. After the trial court denied the defendant's pretrial motion, the request for a continuance was transmuted into a different question: whether defense counsel, apparently confronted with a client now wishing to present perjured testimony through new witnesses,[1] should be permitted to withdraw before the jury had been sworn, resulting in a continuance for a theoretically different reason based on substantially the same facts.

I agree a remand is required for further inquiry into counsel's reasons for seeking to withdraw. I write separately, however, for three reasons: to suggest procedures for conducting a timely pretrial (or midtrial) inquiry in future cases; to stress that the analysis may be different when counsel seeks to withdraw because his client, not another defense witness, intends to testify falsely; and to express my belief that the single relevant inquiry is whether the lawyer has an "actual conflict of interest" that will "adversely affect [the] lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980). The client's manipulations and the court's own interest in expediting the trial are not part of that calculus.

I.

First, there are procedural concerns. The trial court had a responsibility to inquire once counsel, as an officer of the court, represented that he had an ethical basis for withdrawal. *See Singley v. United States*, 548 A.2d 780 (D.C.1988); *Douglas v. United States*, 488 A.2d 121, 136 (D.C.1985). There are three obvious problems with such an inquiry: how to protect client confidences and secrets; how to protect the client-defendant's fifth amendment privilege against self-incrimination should he choose to speak at the hearing; and how to avoid tainting the trial judge with adverse information about the client-defendant.[2] The only solution to the last concern is to have a different judge hear and decide the withdrawal motion. This will not necessarily force a continuance of the trial. The "judge in chambers" designated to hear emergency matters, *see* Super.Ct. Civ.R. 12–I(b), can be called upon to conduct the inquiry during a recess; a continuance will be necessary only if counsel's request to withdraw has merit.

Preserving the lawyer's obligation not to reveal client confidences and secrets, *see* DR 4–101(B),[3] is more problematic. There

---

is, as the government concedes, meritorious but, as the government also maintains, and we agree, the error was harmless. *Dorman v. United States*, 491 A.2d 455 (D.C.1984) (en banc). Although the trial judge did not immediately give a cautionary instruction to the jury, once appellant objected the prosecutor proceeded to impeach him properly and the trial judge gave a cautionary instruction. The judge also included a cautionary instruction in his general instructions to the jury at the close of all the evidence. *See id.* at 464; *Fields v. United States*, 396 A.2d 522, 526 (D.C.1978); *Dixon v. United States*, 287 A.2d 89, 99–100 (D.C.), *cert. denied*, 407 U.S. 926, 92 S.Ct. 2474, 32 L.Ed.2d 813 (1972). The evidence against appellant, moreover, was overwhelming.

1. Counsel's reference to DR 2–110(C)(1)(c), in addition to DR 2–110(C)(1)(d), was the tip-off here. The court's obligation to hold a hearing, as well as the procedures for doing so, will be the same when counsel seeks to withdraw for ethical reasons without intimating why.

2. Even though, in this case, a jury is the factfinder, the judge may be unduly affected in his or her rulings, as well as in eventual sentencing, if the judge learns from defense counsel (instead of merely from surmise) that the defendant plans to lie. *See Butler v. United States*, 414 A.2d 844, 854 n. 1 (D.C.1980) (en banc) (Ferren, J., concurring in part and dissenting in part).

3. The present Code of Professional Responsibility is published as Appendix A to D.C. Bar R.X. *See also* RULES OF PROFESSIONAL CONDUCT Rule 1.6 (Proposed Rules) (published in BAR REPORT (Supp. Aug./Sept.1988)).

is only one way to assure a meaningful hearing on the withdrawal motion: permit the attorney freely to disclose all relevant facts to the judge designated to hear the motion, without fear of violating any ethical obligation to the client, just as the attorney is entitled to do when the client accuses the attorney of constitutional ineffectiveness. *See* DR 4–101(C)(4); *Butler v. United States*, 414 A.2d 844, 854–55 (D.C. 1980) (en banc) (Ferren, J., concurring in part and dissenting in part).[4] Concomitantly, the client-defendant must be protected against any subpoenaed or volunteered testimony by the hearing judge (or by any other witness to the motion hearing) that would disclose what otherwise is a lawyer-client confidence or secret. *See Butler*, 414 A.2d at 855–56 & 856 n. 4 (Ferren, J., concurring in part and dissenting in part).

The fifth amendment protects the client-defendant against any compelled response to the attorney's accusations. But, if the client-defendant does wish to speak, the hearing judge may wish to assure the defendant access to independent counsel to evaluate and monitor that decision. The judge in any event must assure that any such statement is not later admitted against the defendant at trial, except, perhaps, by way of impeachment in some circumstances. *Cf. Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968). My hunch is that, given fifth amendment problems and the likely credibility of most attorneys, the withdrawal motion will be decided primarily by reference to what the lawyer, not the client-defendant, has to say.

In this case, of course, we are no longer at the stage where a trial judge is trying to arrange for an appropriate hearing on defense counsel's pretrial motion to withdraw. We confront a post-conviction challenge alleging a violation of the sixth amendment right to counsel. I therefore turn to the substantive issues.

## II.

Ordinarily, as the majority notes, to obtain reversal an appellant must show that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 350, 100 S.Ct. at 1719. If an actual conflict of interest is shown, however, an adverse impact is conclusively presumed and reversal is required; the appellant need not demonstrate that the conflict prejudiced the outcome of the trial. *Id.* at 349–50, 100 S.Ct. at 1718–19. Furthermore, the kind of actual conflict warranting reversal is not limited to cases, such as *Cuyler*, in which a lawyer has engaged in multiple representation; all personal conflicts of interest that might prejudice the representation are to be considered. *See, e.g., Douglas*, 488 A.2d at 136–37 (counsel subject of disciplinary complaint by client-defendant pending trial); *United States v. Cancilla*, 725 F.2d 867, 868–71 (2d Cir. 1984) (counsel may have engaged in criminal activity, similar to charges against client-defendant, involving possible common co-conspirator).

Accordingly, whether we focus on the proper disposition of counsel's pretrial motion to withdraw or on appellant's constitutional argument on appeal based on denial of counsel's motion, the concern is the same: the existence of an "actual conflict of interest." *Cuyler*, 446 U.S. at 350, 100 S.Ct. at 1719. If there is such a conflict, then the trial court must grant counsel's motion to withdraw; otherwise, on direct appeal reversal will be required under the sixth amendment.

If the trial court had conducted a pretrial inquiry, the central question apparently would have been whether there was an "actual conflict of interest," requiring the judge to grant counsel's motion to withdraw once the judge learned that counsel knew one or more witnesses proffered by the defendant intended to give false testimony. *See supra* note 1.

DR 7–102(A) provides, where relevant:

In his [or her] representation of a client, a lawyer shall not:

\* \* \* \* \* \*

4. *See also* Proposed Rule 1.6(d)(3).

(4) Knowingly use perjured testimony or false evidence.

(5) Knowingly make a false statement of law or fact.

(6) Participate in creation or preservation of evidence when he [or she] knows or it is obvious that the evidence is false.

*See also* RULES OF PROFESSIONAL CONDUCT, 3.3(a)(4) (Proposed Rules) (published in BAR REPORT (Supp. Aug./Sept.1988)). An attorney, therefore, may ignore a client-defendant's request to call a witness (other than the defendant) who intends to lie. Counsel is duty-bound not to offer evidence he or she knows to be false, and the client-defendant has no basis for claiming ineffective assistance of counsel if the lawyer refuses to call the proffered witness. *See United States v. Curtis,* 742 F.2d 1070, 1074 (7th Cir.1984) (implicitly acknowledges propriety of district court finding that defense counsel, because of ethical obligation, refused to call alibi witnesses who he knew would present false testimony). In this situation, therefore, I see no legally cognizable conflict between lawyer and client

and, thus, no basis for withdrawal; the lawyer is ethically and legally in charge of the situation.

There may be situations where client insistence on using apparently perjurious witnesses, coupled with the lawyer's refusal to do so, creates enough deterioration of the lawyer-client relationship that withdrawal, even midtrial, should be permitted, for example, under DR 2-110(C)(1)(d) (conduct rendering it unreasonably difficult for lawyer to carry out employment effectively).[5] But, the ground for withdrawal would have to be something more than client insistence on calling perjurious witnesses as such, since the lawyer can properly moot that particular conflict by simply refusing to call the witnesses.

It is important to keep in mind, however, that the ethical situation may be different when the client-defendant insists on taking the stand to testify falsely. Whereas a defendant has no right to relief when counsel, for ethical reasons, refuses to call some other perjurious witness, the defendant may have a constitutional right to testify in his or her own defense.[6] If so, counsel

---

**5.** If the jury has been sworn, the level of conflict must have created a manifest necessity for permitting withdrawal in a situation (unlike this one) where the client wants the lawyer to continue; otherwise, absent client consent, double jeopardy concerns would haunt the proceeding. *See Nix v. Whiteside,* 475 U.S. 157, 170, 106 S.Ct. 988, 996, 89 L.Ed.2d 123 (1986).

**6.** Although the Supreme Court has never directly held that a criminal defendant has a constitutional right to testify, it has acknowledged that right many times in dicta. *See Faretta v. California,* 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975) ("It is now accepted ... that an accused has a right ... to testify in his own behalf...."); *Brooks v. Tennessee,* 406 U.S. 605, 612, 613, 92 S.Ct. 1891, 1895, 1896, 32 L.Ed.2d 358 (1972) (whether criminal defendant is to testify is "matter of constitutional right" under "guiding hand of counsel"); *Harris v. New York,* 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971) (every criminal defendant "privileged to testify in his own defense"). Federal courts of appeals and state supreme and appellate courts have expressly found such a right. *United States v. Bifield,* 702 F.2d 342, 347–49 (2d Cir.), *cert. denied,* 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983); *Alicea v. Gagnon,* 675 F.2d 913, 923 (7th Cir. 1982); *People v. Freeman,* 76 Cal.App.3d 302,

310, 142 Cal.Rptr. 806, 810–11 (1977); *State v. Smith,* 299 N.W.2d 504, 506 (Minn.1980); *Commonwealth v. Lincoln,* 270 Pa.Super. 489, 494, 411 A.2d 824, 827 (1979). *See also* 1 ABA STANDARDS FOR CRIMINAL JUSTICE—THE DEFENSE FUNCTION —§ 4–5.2(a)(iii) (1979) ("whether to testify in his or her own behalf" is decision to be made by the accused). *See generally* Rieger, *Client Perjury: A Proposed Resolution of the Constitutional and Ethical Issues,* 70 MINN.L.REV. 121, 128–143 (1985) (broad discussion of right to testify).

The Supreme Court has also held in certain contexts that a criminal defendant does not have a constitutional right to testify falsely, at least not without certain sanctions. *Nix v. Whiteside,* 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed. 2d 123 (1986) (counsel's threat to inform court and to seek to withdraw if client-defendant lied on witness stand did not violate sixth amendment right to effective assistance of counsel); *United States v. Havens,* 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980) (prosecutor may use illegally seized evidence to impeach perjurious testimony by defendant on cross-examination); *Harris v. New York, supra* (statements of defendant taken in violation of *Miranda* rights admissible to impeach statements by defendant on direct examination). None of these cases, however, addresses the question whether counsel has a right, because of anticipated perjury, to waive the client's right to testify.

may not be able to waive that right for the client. *Compare Winters v. Cook*, 489 F.2d 174, 179 (5th Cir.1973) (dicta) (defendant's right to testify is inherently a personal fundamental right that can be waived only by defendant, not by attorney) with *United States v. Curtis*, 742 F.2d at 1076 (although counsel, as matter of trial strategy, may not waive defendant's personal constitutional right to testify truthfully, defendant has no constitutional right to testify falsely and thus counsel was not ineffective for refusing to allow defendant to take stand to testify falsely).

It follows that, in such a case, counsel may not be able to avoid associating in one way or another at trial with a lying witness—the client—unless the court grants counsel's motion to withdraw.[7] The client will therefore have a measure of control over the lawyer that is not present when, as in the instant case, the client wants the lawyer to call some other witness who the lawyer knows intends to lie. The question thus would become: whether the defendant's right to testify and the lawyer's duty to provide representation can create an "actual conflict of interest," *Cuyler*, 446 U.S. at 350, 100 S.Ct. at 1719, entitling, and in fact even requiring, counsel to seek to withdraw.

This is not the place to elaborate very much on this most vexing of ethical issues, but it is important to recognize that this court has announced an acceptable approach to ease the conflict—indeed, one that presupposes counsel in a criminal case will not be in a position to waive a perjurious client's election to testify. We have held that, if a defendant's lawyer deals with the defendant's perjurious testimony by following the procedure outlined in Proposed Standard 7.7(c) of the ABA STANDARDS FOR CRIMINAL JUSTICE: THE DEFENSE FUNCTION (1971),[8] the client-defendant will

---

**7.** It is an open question in this jurisdiction whether, after a client testifies falsely, an attorney can reveal the perjury to the court and thereby disassociate himself or herself from the lying witness without violating the disciplinary rules. *But see Board of Overseers of the Bar v. Dineen*, 481 A.2d 499 (Me.1984) (disciplinary action against an attorney for not revealing client's false testimony to the court), *cert. denied*, 476 U.S. 1141, 106 S.Ct. 2248, 90 L.Ed.2d 694 (1986); *In re King*, 7 Utah 2d 258, 322 P.2d 1095 (1958) (same). In *Butler*, however, concerning the alleged ineffectiveness of counsel, we stressed the importance of the protection of a client's confidences and wrote that "in such a dilemma, advice, disassociation, and even passive representation, may be resorted to in lieu of exposure." 414 A.2d at 849. By endorsing the American Bar Association's Proposed Standard 7.7, *see Butler*, 414 A.2d at 850, we allow an attorney, consistent with the disciplinary rules, to choose passive representation.

**8.** Proposed Standard 7.7 (1971) provides:
Testimony by the defendant.
(a) If the defendant has admitted to his lawyer facts which establish guilt and the lawyer's independent investigation establishes that the admissions are true but the defendant insists on his right to trial, the lawyer must advise his client against taking the witness stand to testify falsely.
(b) If, before trial, the defendant insists that he will take the stand to testify falsely, the lawyer must withdraw from the case, if that is feasible, seeking leave of the court if necessary.
(c) If withdrawal from the case is not feasible or is not permitted by the court, or if the situation arises during the trial and the defendant insists upon testifying falsely in his own behalf, the lawyer may not lend his aid to the perjury. Before the defendant takes the stand in these circumstances, the lawyer should make a record of the fact that the defendant is taking the stand against the advice of counsel in some appropriate manner without revealing the fact to the court. The lawyer must confine his examination to identifying the witness as the defendant and permitting him to make his statement to the trier or the triers of the facts; the lawyer may not engage in direct examination of the defendant as a witness in the conventional manner and may not later argue the defendant's known false version of facts to the jury as worthy of belief and he may not recite or rely upon the false testimony in his closing argument.
This court has not expressly dealt with the requirement of Standard 7.7(b) that a lawyer must seek leave to withdraw "if feasible" before using the Standard 7.7(c) procedure, but in *Butler* we strongly implied that Standard 7.7 in its entirety reflected an acceptable, even preferred, approach to the problem of client perjury in criminal cases. *See Butler*, 414 A.2d at 850.
In 1979, the American Bar Association House of Delegates withdrew Proposed Standard 7.7 after rejecting suggested amendments, including one that would have made the 7.7(b) withdrawal requirement permissive rather than mandatory. 1 ABA STANDARDS FOR CRIMINAL JUSTICE—THE DEFENSE FUNCTION—§ 4–7.7 (Supp.1986). The House referred Proposed Standard 7.7 to the ABA's Special Commission on Evaluation of Professional Standards which eventually proposed the ABA Model Rules of Professional Con-

not be deprived of the sixth amendment right to the effective assistance of counsel. *See Butler*, 414 A.2d at 850; *Thornton v. United States*, 357 A.2d 429, 437–38 (D.C.), *cert. denied*, 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976); *cf. Johnson v. United States*, 404 A.2d 162, 163–65 (D.C.1979) (where defense counsel did not believe his client's testimony was untrue the trial court could not force him to follow Standard 7.7). *See also* Proposed Rule 3.3(b), *supra* note 8, and official Comment thereto.

I do not believe, however, that the availability of Proposed Standard 7.7 or of Proposed Rule 3.3(b) necessarily moots the conflict between lawyer and perjurious client in the way that DR 7-102 does by empowering the lawyer to ignore the client's demand to call other perjurious witnesses. Despite the availability of Proposed Standard 7.7 or Proposed Rule 3.3(b),

the lawyer cannot altogether avoid a sense of participation when the client takes the stand and lies. Thus, without an opportunity to withdraw, the lawyer with a client who intends to lie may not be able to avoid an intense personal conflict.[9] Accordingly, there will be room for the argument that, absent serious harm to the client, a judge should not compel a lawyer, over the lawyer's objection, to associate further in a criminal case with a client-defendant who the lawyer knows intends to commit perjury at trial.[10] In my judgment, the trial court's eagerness to move its calendar, including an understandable desire not to permit a defendant's proposed perjury to force a continuance, is not a proper basis for compelling a lawyer to continue the association if the lawyer honestly believes and credibly represents that he or she cannot tolerate it and thereby conveys a serious personal conflict between serving the

duct, adopted as amended on August 2, 1983, that form the basis for the proposed Rules of Professional Conduct now under consideration by this court. *See id.; Coleman v. State*, 621 P.2d 869, 881 n. 21 (Alaska 1980), *cert. denied*, 454 U.S. 1090, 102 S.Ct. 653, 70 L.Ed.2d 628 (1981); *supra* note 3. The ABA House of Delegates, the District of Columbia Bar Model Rules of Professional Conduct Committee, and the Board of Directors of the District of Columbia Bar all have addressed the problem reflected by Proposed Standard 7.7 and have made a variety of recommendations. This court, in publishing proposed Rules of Professional Conduct for comment, *see supra* note 3, has proposed to adopt in Proposed Rule 3.3(b) essentially the approach of Standard 7.7.

Proposed Rules 3.3(b) provides:

(b) When the witness who intends to give evidence that the lawyer knows to be false is the lawyer's client and is the accused in a criminal case, the lawyer shall first make a good faith effort to dissuade the client from presenting the false evidence; if the lawyer is unable to dissuade the client, the lawyer shall seek leave of the tribunal to withdraw. If the lawyer is unable to dissuade the client or to withdraw without seriously harming the client, the lawyer may put the client on the stand to testify in a narrative fashion, but the lawyer shall not examine the client in such manner as to elicit testimony which the lawyer knows to be false, and shall not argue the probative value of the client's testimony in closing argument.

The ABA and District of Columbia Bar proposals for Rule 3.3(b) differ from the one this court has published for comment.

**9.** Even if counsel could ethically expose the client's perjury to the court, *see supra* note 7, unless the court allows counsel to withdraw, that lawyer would be forced to go forward with representation of a client while planning to expose the client's perjury to the court later, a situation frought with conflict.

**10.** Obviously, the question whether a lawyer can be said to "know" the client or other witness intends to commit perjury, *see Johnson v. United States*, 404 A.2d at 163–65, as well as the question whether, in context, withdrawal would "seriously harm" the client, may be difficult to answer. The "serious harm" criterion is a new formulation. Proposed Standard 7.7, *supra* note 8, talks about withdrawal "if feasible." Proposed Rule 3.3(b) instead provides more specifically for withdrawal if possible "without seriously harming the client." The official Comment to Proposed Rule 3.3(b) discusses what is meant by "serious harm" and says the term should be "construed narrowly to preclude withdrawal only where the special circumstances of the case are such that the client would be significantly prejudiced, such as by express or implied divulgence of information otherwise protected by [proposed] Rule 1.6" on confidential information. I would not find a violation of client confidentiality by use of the Standard 7.7 or the Rule 3.3(b) approach in itself or by use of the suggested procedure for permitting counsel to tell the motions judge of the details underlying the motion to withdraw. *See supra* Part I.

client and honoring the lawyer's own principles.

Even if most criminal defense lawyers are hardened to expect lying clients—or at least have trained themselves not to "know" when lies under oath are taking place—I believe there still are lawyers who simply do not want to be associated with perjury in any way. I respect that. To be so associated—even on the limited basis of Proposed Standard 7.7, as we have permitted under *Butler* and *Thornton*—may cause in some lawyers an understandable emotional reaction creating a profound personal conflict between lawyer and client that adversely affects the representation within the meaning of *Cuyler v. Sullivan, supra.* Under these circumstances, absent serious harm to the client, *see supra* note 10, I believe the lawyer should be allowed to withdraw, even if, as in this case, the defendant initiated the effort for a continuance to force withdrawal and the trial court thinks the lawyer is the pawn of a manipulative client. The fact that a client may be manipulative does not imply that a lawyer who honestly seeks to withdraw for ethical reasons is a party to that manipulation.

Furthermore, to force a lawyer to represent a client who plans to lie under oath in a criminal case is obviously at odds with an ethical scheme that tells the lawyer to ask the court for permission to withdraw under such circumstances unless withdrawal is not "feasible," Proposed Standard 7.7(b) and (c), or would "seriously harm [ ] the client," Proposed Rule 3.3(b). Failure to grant a credible withdrawal motion, absent serious harm to the client, would make this particular ethical obligation a useless gesture. Finally, we are not talking about the last lawyer in town. Many counsel will acknowledge that they can provide adequate representation, without personal, prejudicial qualms about the client's behavior, if they follow the testimonial procedure outlined in Proposed Standard 7.7(c) and in Proposed Rule 3.3(b), *supra* note 8. If withdrawal is permitted, the client will not be without a competent lawyer.

### III.

In the present case, counsel was in a position ethically and constitutionally to refuse to call the witnesses his client wanted to present; thus, counsel did not have a conflict in the same sense he might have had if forced to be associated at trial with a client who took the stand to lie. But this is not to say the trial court is foreclosed, on remand, from considering among other things the deterioration of the lawyer-client relationship that may have been caused by contention over the client's demand to use perjurious witnesses. *See* DR 2–110(C)(1)(d) (permissive withdrawal). I do not believe that a lawyer who credibly represents he or she cannot continue the representation without a personal conflict that adversely affects the lawyer's performance should be automatically denied withdrawal merely because the court wants to move its calendar and finds the client to be manipulative. It is the nature of the lawyer's conflict, not the client's machinations or the court's own convenience, that determines whether sixth amendment rights have, or have not, been honored.