322 P.2d 1095

**In re Dwight L. KING.**

No. 8652.

Supreme Court of Utah.

March 19, 1958.

Arthur H. Nielsen, Salt Lake City, for plaintiff.

L. O. Thomas, Allan E. Mecham, Salt Lake City, for respondent.

PER CURIAM.

This case involves a review of the record in a disciplinary hearing which was commenced after a complaint had been filed with the Utah State Bar Association

charging petitioner with unprofessional conduct in a civil suit in which he was attorney for one of the parties, and involves a review of a recommendation of the Board of Commissioners of the Association, after referral of the matter had been made by that Board to an Investigating Committee of five members of the Bar. The Investigating Committee recommended that petitioner be disciplined for conduct out of line with the Revised Rules of the Utah State Bar governing professional conduct, which conduct will be discussed later in this opinion. Under the customary procedure in such cases, the Bar Commission appointed a Disciplinary Committee to hear the charge against petitioner, and appointed two resident lawyers to prosecute the same. A hearing was had after which written findings and conclusions were filed to the effect that during the course of a civil trial in which petitioner was counsel for one Schnitzer, the latter, on June 10, 1954, testified falsely under oath as to the dates and places when and where a waiver of notice of directors' meeting and a resolution of a board of directors of his company had been prepared and signed; that petitioner knew of the falsity of such testimony and that of another witness, Hutchinson, but that petitioner failed to disclose such perjury to the court or opposition counsel until June 21, although he could have done so at any time during the two dates; and that said documents were actually prepared by the witness Hutchinson, (not at a remote time and place) in the petitioner's office on the morning before the trial on June 10. The Disciplinary Committee concluded "That the said Dwight L. King violated the Provisions of Rule III, Sec. 32, Sub-paragraphs 15 and 41 * * * of the rules governing professional conduct and discipline," and reported its hearing and results to the Board of Commissioners of the Utah State Bar, which Board recommended to this Court that petitioner be suspended from the practice of law for six months and until he is recommended for reinstatement by the Board of Commissioners of the Utah State Bar Association.

Petitioner has sought a review of the matter by this court, asserting that he did not unreasonably delay in divulging the perjury to the trial court and opposing counsel and that he did not violate the disciplinary rules, pointing to the record in support of his contentions.

The record in this case is rather voluminous and the matter has been heard by an investigating committee of five, a disciplinary committee of three and a Board of Commissioners of seven, and there appears to have been no dissent voiced nor any minority report of any kind filed which would indicate that those hearing the matter did not join in a unanimous conclusion that disciplinary action was called for in this case. Even so, we are aware of the

principle that a member of our profession should not be disbarred or suspended unless it is clear from the evidence and record that his conduct has constituted a breach of the rules promulgated for professional conduct, or that his conduct inherently has breached the traditional precepts with respect to relationship between counsel, client and court. We are also aware that we cannot lightly turn our backs on a studied, unanimous conclusion reached by those appointed to seek out the facts, unless it appears that they have misconceived the nature of such relationship between counsel, client and court, or have misinterpreted the facts. We review the record to determine if it clearly supports the conclusions which have been reached by those mentioned. We do this although we are not bound by the conclusions or recommendations made.

Without reporting all of the details and testimony of the lengthy record, we think the following resume of certain salient, significant facts is sufficient to illustrate and substantiate our decision in this matter.

Prior to June 10, 1954, a microphone was installed in a hotel room by an agent of Schnitzer's opponent in a lawsuit where Schnitzer was a defendant and where the petitioner was his attorney. On June 9, a conversation was monitored, wherein it was decided to have petitioner go to breakfast with Schnitzer and Hutchinson the next morning, Thursday, June 10, before the trial commenced. It was decided that a resolution and waiver of notice of the Board of Directors of Schnitzer's company be drawn up, and to do this, they adjourned to petitioner's law office where Hutchinson and Schnitzer were allowed to use petitioner's stenographer and typewriter to prepare the documents. However, at the trial, in the morning session, Schnitzer, upon examination by opposing counsel, falsely testified that the waiver of notice was prepared and signed in Portland, Oregon, on April 1, 1953, although under intense examination he did admit that he had signed the resolution in Salt Lake City that morning before trial. He and Hutchinson later were convicted of perjury for having given the false testimony.

There seems to be no question but what petitioner knew the testimony to be false at the time it was given. He asserted that while he and his clients were at lunch that day, he reprimanded Schnitzer for giving the false testimony and they both agreed that it should be corrected. He asserted that both he and Schnitzer cautioned Hutchinson, who was expected to testify in the afternoon, to testify truthfully concerning the facts surrounding the preparation and execution of the waiver and the resolution. When Hutchinson testified at the afternoon session, however, he also perjured himself by repeating what Schnitzer had already testified in the morning. In the face of this false testimony, and notwithstanding the warning asserted

to have been given, the petitioner still failed to apprise the court or opposing counsel of the falsity or his knowledge of it. At the hearing before the Investigating Committee, petitioner asserted that he apprised no one of the true facts because he considered that his duty to protect his client was greater than his duty to the court to disclose the perjury. At the hearing before the Disciplinary Committee he changed his position somewhat and asserted that although he made no disclosure at the time, he intended to do so at the first opportunity he had and at a time when he considered it most advantageous to his client and his case.

No disclosure was made of the perjury on June 10 or on Friday, June 11, although on one occasion on the latter date, petitioner was permitted to call Mr. Hutchinson to the stand to testify as to a particular matter, but having done so, made no effort to have him recant. There was no effort to disclose the false testimony on the next court day which was the following Monday, nor on Tuesday, Wednesday, Thursday or Friday of that week. On Thursday, however, the opposition had produced a handwriting expert who testified to the effect that the waiver of notice and the resolution were written and signed about the same time on the same kind of paper, and a photographer was called to substantiate such conclusion. On Friday, the next day, a police officer who had installed the microphone in Schnitzer's room, testified as to conversation which took place in Schnitzer's room, which conversations he monitored and which he recorded on a tape recorder, and he produced a number of tapes on which the conversations had been recorded. On the next court day, which was the following Monday, June 21, both Schnitzer and Hutchinson confessed to the perjury. Under such circumstances the Investigating Committee, the Disciplinary Committee and the Board of Commissioners all agreed that the petitioner was guilty of unprofessional conduct calling for disciplinary action, as was stated above.

It appears to have been conceded that if there is knowledge on the part of a lawyer such as petitioner had here, clearly it would be a departure from conduct expected of an officer of the court if there were no action whatever taken looking toward disclosure of the true facts. We are not too impressed with petitioner's contention that he made a disclosure at the first opportunity he had. Such assertion could only be based on an assumption, which petitioner seemed to suggest, that disclosure need be made only at a time when counsel considers it necessary to protect his client, or at a time when counsel has his first opportunity to disclose it on his case in chief. Neither assumption has merit here, since petitioner had one chance to rectify the matter when he was allowed to call Hutchinson for direct examination but failed to ask him, and Hutchinson failed to volunteer, whether he has

falsified or not, and secondly, it would have been an easy matter for petitioner to have approached the trial court in chambers, at recess time or after hours and apprise the court of the turn of events, and we are not convinced by any clear evidence in the record that there was entire good faith exercised when the disclosure came after, not before, the falsifiers were caught and exposed, some 11 days after the perjury and one court day after it was clearly shown they had perjured themselves.

We cannot permit a member of the bar to exonerate himself from failure to disclose known perjury by a self-serving statement that in his judgment he had a duty of non-disclosure so as to protect his client which is paramount to his duty to disclose the same to the court, of which he is an officer, and to which he in fact, owes a primary duty under circumstances such as are evidenced in this case. Nor can we subscribe to any principle that would permit a member of the bar to bide his time and decide himself when the disclosure should be made. This is particularly so, when, as here, it was made immediately after the falsity had been literally pried out of the false witnesses by opposition counsel, and at a time when a shadow already has been cast on a sincerity which was not evident prior to the time of such forced disclosure.

We believe the answer in this case can be found in the language of Thornton on "Attorneys at Law," Vol. 2, p. 1235, Sec. 822, quoted by respondent, where it is said:

"An attorney is never justified in continuing a case after he has knowledge of the fact that it is being supported by perjured testimony; and if he proceeds with the trial thereafter, without acquainting the court of the fact that the testimony is false and seeks to recover judgment on such testimony, his misconduct merits disbarment."

Although we feel that this case does not merit disbarment, we believe that the recommended six-month suspension is warranted. It is the order, therefore, that petitioner be and he is hereby suspended from the practice of law for the period of six months from the time this case is remitted to the Utah State Bar Association, and until he is reinstated upon application to that body and such application is approved by this Court, and after payment to the Utah State Bar Association of all costs expended by it in its prosecution of the charges.

WADE, Justice (concurring and dissenting).

I agree that in view of all the facts and circumstances it was not unreasonable for the Utah State Bar Commissioners to find that petitioner did not disclose to the court within a reasonable time that his client had given false testimony. However, in view of the fact that petitioner is a young man with a hitherto good reputation and high

ethical standards, who was engaged in a bitter trial against an attorney whose methods, to say the least, were very aggressive, and further, in view of the fact that the false testimony was on an immaterial matter which could not affect the outcome of the case, I do not believe it merits a six months' suspension. I believe that a public reprimand to be printed in the Utah Bar Journal or at most a suspension for a period of one month would be sufficient discipline in this case. That the respondent would welcome the quantum of punishment being fixed by this court is suggested by its brief wherein it is stated on page 32 thereof: "* * * The quantum of punishment, however, is a matter within the discretion of the court."