## In re Benjamin P. KNOWLTON, F–220.

### No. 880448.

Supreme Court of Utah.

Oct. 30, 1990.

Rehearing Denied Nov. 16, 1990.

---

Christine A. Burdick, Salt Lake City, for Utah State Bar.

Thom D. Roberts, Salt Lake City, for Knowlton.

STEWART, Justice:

Attorney Benjamin P. Knowlton petitioned this Court to review the findings of fact, conclusions of law, and recommendation for discipline of the Board of Commissioners of the Utah State Bar. After investigation and hearings by a hearing panel of the Ethics and Discipline Committee of the Bar, the Board adopted the panel's conclusions that Knowlton violated the following provisions of the Utah Code of Professional Responsibility (1971): DR 1–102(A)(4) (engaging in conduct involving dishonesty), DR 1–102(A)(6) (engaging in conduct that adversely reflects on fitness to practice law), and DR 9–101 (failing to avoid even the appearance of impropriety).[1] The Board recommended that Knowlton be suspended from the practice of law for six months, with five months stayed on the

condition that Knowlton pay $4,999.95 to Karen Basso Lehmberg Trujillo as restitution prior to the conclusion of the six-month suspension period. The Board recommended that, if Knowlton does not make restitution by the end of the six months, he be suspended for the remaining five months. Knowlton challenges both the findings of fact and the recommendation for discipline.

Knowlton was retained by Ellis and Karen Lehmberg, who at the time were husband and wife, to negotiate the sale of a house legally owned by Ellis Lehmberg and Karen's parents, Henry and Elaine Basso. Karen Lehmberg had previously been the sole owner of the house, but had quitclaimed her interest to her husband, Ellis Lehmberg, and her parents to avoid certain obligations arising from a prior marriage. Knowlton successfully completed the sale of the house in April 1982 and was paid $2,000 for his legal services. The sale produced net proceeds of $5,599.95, which Knowlton deposited in his trust account.

Karen Lehmberg filed for divorce within two weeks of the sale of the house, and the sale proceeds became a disputed marital asset. Knowlton did not represent either Ellis or Karen in the divorce proceeding. However, Knowlton attended a hearing in the divorce proceeding where he acknowledged to Judge Uno, the district court judge presiding over the divorce proceeding, that he was holding the proceeds from the sale of the house in trust. Judge Uno ordered Knowlton to continue to hold the monies in trust, except for $600, which was to be used to repair a car belonging to Karen and Ellis.

The cash that Knowlton held in trust was awarded to Karen Lehmberg in the divorce proceeding. After being informed by Karen Lehmberg's counsel that the trust monies had been awarded to her and not to Ellis Lehmberg, Knowlton claimed an attorney's lien pursuant to Utah Code Ann. § 78–51–41 (1987) (amended 1989) for legal

---

1. The Utah Code of Professional Responsibility is found in the Utah Revised Rules of Professional Conduct. This Court adopted new rules of professional conduct, effective January 1, 1988. Utah Rules of Professional Conduct (1988). The conduct in the instant case occurred prior to 1988.

fees owed him for services performed for Ellis Lehmberg. The Board found, "[Knowlton] did not establish by sufficient and clear evidence the amount of the attorney's lien which he claimed; all evidence with respect to the amount of outstanding attorney's fees owed by Ellis Lehmberg was, at best, speculative." When Knowlton did not pay the trust monies to Karen Lehmberg, she pursued a civil action and obtained a judgment against Knowlton in the amount of $5,599.95, plus interest from February 5, 1983.[2]

In May 1986, the Ethics and Discipline Committee of the Bar issued a formal complaint against Knowlton, and hearings were held in February 1988. The hearing panel concluded that Knowlton had violated the Revised Rules of Professional Conduct and recommended the discipline ultimately adopted by the Board. The hearing panel found that Knowlton intentionally converted the trust monies to his personal use and that his intentional conduct was an aggravating factor. The panel found no mitigating factors. Knowlton stipulated to the recommendation of discipline, although he did not stipulate to the findings of fact or conclusions of law.

This Court will not overturn the Board's findings unless they are arbitrary, capricious, or plainly in error. *In re Johnston*, 524 P.2d 593, 594 (Utah 1974); *In re Bridwell*, 25 Utah 2d 1, 2, 474 P.2d 116, 116 (1970); *In re Fullmer*, 17 Utah 2d 121, 122, 405 P.2d 343, 344 (1965). Nevertheless, we may accord less deference to Board findings because of the unique nature of disciplinary actions and our knowledge of the nature of the practice of law. Although we adopt the "arbitrary" or "capricious" standard for evaluating the factual findings of the Board, we do so only as a general proposition and reserve the right to draw inferences from basic facts, which may differ from the inferences drawn by the Board.

Moreover, there is a valid distinction for review purposes between the Board's findings and its recommendations. *In re Brid-*

*well*, 25 Utah 2d at 2, 474 P.2d at 116. We have observed that "we do not consider the recommendations of punishment made by the Bar to be in the same category as we do their findings of fact, because it is our responsibility to discipline an erring attorney...." *Id.* We need not, therefore, defer to the Board in deciding what may constitute appropriate discipline. In this regard, it is imperative to bear in mind that the review of attorney disciplinary proceedings is fundamentally different from judicial review of administrative agency proceedings. The Utah Constitution authorizes this Court's power to regulate the practice of law, and that includes the promulgation of rules of discipline and enforcement of ethical obligations of attorneys. Utah Const. art. VIII, § 4.

The courts have traditionally regulated the practice of law, often with the assistance of bar associations. Although the Utah State Bar performs essential functions in investigating complaints, adjudicating facts, and recommending discipline, it is this Court that is ultimately responsible for bar discipline. The matter of sanctions often raises delicate and difficult issues, because sanctions can destroy a lawyer's professional life and livelihood. However, sanctions are essential to protect the public from unethical conduct. Imposing sanctions that protect the public and, at the same time, are appropriate to the offense requires careful consideration of a number of factors by those who are familiar with the practice of law, professional standards, and practice before the courts of the state.

Our case law reflects the relationship between this Court and the Bar. The Bar's findings and recommendations are advisory only. *In re Judd*, 629 P.2d 435, 437 (Utah 1981); *In re Hansen*, 586 P.2d 413, 417 n. 4 (Utah 1978); *In re Hansen*, 584 P.2d 805, 807 (Utah 1978). The Court is not bound by the recommendation of the Board. *In re Blackham*, 588 P.2d 694, 696 (Utah 1978); *In re Hughes*, 534 P.2d 892, 892 (Utah 1975); *In re King*, 7 Utah 2d 258, 260, 322 P.2d 1095, 1096 (1958). Indeed,

---

**2.** The Board did not find that Knowlton's nonpayment of the civil judgment was an ethical violation, and nonpayment of the judgment is not an issue on appeal.

this Court has on a number of occasions departed from the Bar's recommendation. *Blackham*, 588 P.2d 694 (two-year suspension recommended; public censure, reprimand, and payment of costs ordered); *Hansen*, 586 P.2d 413 (one-year disbarment recommended; public reprimand and restitution ordered); *Hansen*, 584 P.2d 805 (one-year suspension recommended; public censure, reprimand, and payment of actual and necessary expenses of the Bar ordered); *In re Badger*, 27 Utah 2d 174, 493 P.2d 1273 (1972) (disbarment recommended; disbarment ordered), *order set aside*, 28 Utah 2d 240, 501 P.2d 106 (1972) (two-year suspension ordered); *Bridwell*, 25 Utah 2d 1, 474 P.2d 116 (disbarment recommended; one-year suspension and payment of expenses of the Bar ordered). *See also In re Judd*, 682 P.2d 302, 304 (Utah 1984) (citing *Hansen*, 584 P.2d 805).

In sum, this Court will ordinarily presume that the Board's findings of fact are correct, although we may set those findings aside if they are not supported by the evidence. If the evidence warrants, we may make an independent judgment regarding the appropriate level of discipline, although we always give serious consideration to the findings and recommendations of the Board. These standards are similar to the standards of review applied in a number of other jurisdictions. *Burrell v. Disciplinary Bd. of the Alaska Bar Ass'n*, 702 P.2d 240, 242 (Alaska 1985); *In re Arrick*, 161 Ariz. 16, 18, 775 P.2d 1080, 1082 (1989) (en banc); *Jones v. State Bar of Cal.*, 49 Cal.3d 273, 286, 777 P.2d 170, 178, 261 Cal.Rptr. 397, 405 (1989) (en banc); *Disciplinary Bd. of the Haw. Supreme Court v. Bergan*, 60 Haw. 546, 554–55, 592 P.2d 814, 819 (1979); *In re Lutz*, 100 Idaho 45, 48, 592 P.2d 1362, 1365 (1979); *State Bar of Nev. v. Claiborne*, 756 P.2d 464, 471 (Nev.1988); *State ex rel. Okla. Bar Ass'n v. Cantrell*, 734 P.2d 1292, 1293 (Okla. 1987).

■ The Board adopted the proposed findings of the hearing panel that Knowlton violated DR 1–102(A)(4), DR 1–102(A)(6), and DR 9–101 of the Revised Rules of Professional Conduct. The Board properly found that Knowlton's act of converting funds belonging to one client as payment for a debt owed by another client is dishonest conduct under DR 1–102(A)(4).

The record indicates that Knowlton knew he held the $4,999.95 in trust; indeed, he acknowledged to Judge Uno in open court that he held those monies in trust. Knowlton argues, however, that he had performed legal services for Ellis Lehmberg for which he was not paid and that after seeking legal advice, he asserted an attorney's lien against the trust monies. The Board found that Knowlton did not establish a valid attorney's lien and that the funds were the property of Karen Lehmberg and not proceeds produced by Knowlton for Ellis Lehmberg.[3] When the district court awarded monies plus interest to Karen Lehmberg in the divorce proceeding, Knowlton had a duty to either surrender the monies or appeal the court order if he thought it deprived him of a lawful attorney's lien.

Knowlton maintains that he did not intentionally convert the trust monies but that, after seeking legal advice, he erroneously asserted an attorney's lien and merely made an honest mistake of judgment. Arguably, this explanation was possible in view of the fact that Knowlton had represented Ellis and Karen Lehmberg in the sale of their house. Nevertheless, the Board found that Knowlton's conversion of the funds was knowing and intentional.

---

**3.** Utah Code Ann. § 78–51–41 (1987) (amended 1989) provided for an attorney's lien in certain circumstances:

> The compensation of an attorney and counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor and to the proceeds thereof in whosesoever hands they may come, and cannot be affected by any settlement between the parties before or after judgment.

**810**

The Board's determination that Knowlton violated DR 1–102(A)(4) is supported by the evidence, especially in view of the court order directing Knowlton to retain the funds in trust. Since Knowlton's conduct is in violation of DR 1–102(A)(4), we do not need to address the issue of whether Knowlton violated DR 1–102(A)(6) and DR 9–101.[4]

Rule VII(b) of the Procedures of Discipline of the Utah State Bar provides: "Any term of suspension may be stayed by the Supreme Court conditioned on the suspended attorney's compliance with certain terms and conditions of the stayed suspension." In this case, the Board recommended that Knowlton be suspended from the practice of law for six months, with five months stayed subject to the conditions that (1) Knowlton actually be suspended for 30 days; (2) Knowlton pay restitution of $4,999.95 to Karen Lehmberg Trujillo prior to the conclusion of the six-month period of suspension; and (3) Knowlton pay the Bar's costs of prosecuting these proceedings. Additionally, the Board recommended that should Knowlton fail to comply with the order of discipline and payment of restitution, he may be subject to imposition of the remaining five months of the suspension. A majority of the Court believes that this penalty is appropriate.[5]

The Board's order is affirmed, with the suspension to begin two weeks from the date of this opinion.

HALL, C.J., and DURHAM, J., concur.

ZIMMERMAN, Justice (concurring and dissenting):

I join the opinion of Justice Stewart, except that I would not give Knowlton six months to pay the $4,999.95 in restitution to Ms. Trujillo, an amount which has been due her for many years. This was the Bar's recommendation, but here, I part company with the Bar. I can see no justification for such a long repayment period. I would require Knowlton to repay that sum within one month of the date of this opinion.

HOWE, Associate C.J., concurs in the concurring and dissenting opinion of ZIMMERMAN, J.

---

**4.** A majority of the Court has determined that it is unnecessary to address Knowlton's other violations. However, I believe that the Board's determination that Knowlton violated DR 9–101 is not supported by the evidence. At the time in question, DR 9–101 stated:

> DR 9–101 Avoiding Even the Appearance of Impropriety.
> (A) A lawyer shall not accept private employment in a matter upon the merits of which he has acted in a judicial capacity.
> (B) A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee.
> (C) A lawyer shall not state or imply that he is able to influence improperly or upon irrelevant grounds any tribunal, legislative body, or public official.

None of Knowlton's alleged misconduct involved accepting private employment in a matter in which he acted in a judicial capacity or as a public employee as prohibited by DR 9–101(A) and (B). Nor did his conduct involve implying

that he could improperly influence a judicial tribunal, legislative body, or public official, as prohibited by DR 9–101(C). Although some of the ethical considerations found in Canon 9 deal more generally with the avoidance of professional impropriety, Knowlton did not violate the specific rules found in DR 9–101.

**5.** In my view, a six-month suspension, even if five months is stayed, is oppressive and unreasonable. A short suspension from the practice is sufficient in most cases to destroy an attorney's practice. A suspension for six months is tantamount to a disbarment. Petitioner's conduct is not, in my view, that egregious. In any event, bar disciplines are not the equivalent of criminal sanctions, yet that seems to be the model the Bar has adopted. I think that it is ill-advised to impose an overlong period of suspension and then stay part of it to gain leverage to compel an attorney to comply with other specific remedies. There are ample means to compel compliance short of that.