In the Matter of the COMPLAINT
AGAINST Duane R. SMITH.

No. 920469.

Supreme Court of Utah.

March 31, 1994.

Jo Carol Nesset–Sale, Salt Lake City, for Smith.

Wendell K. Smith, Salt Lake City, for the Bar.

HOWE, Justice:

Duane R. Smith appeals from the recommendation of the Board of Commissioners of the Utah State Bar that he be disbarred. This court has jurisdiction pursuant to article VIII, section 4 of the Utah Constitution and rule XIV of the Rules of Procedures of Discipline of the Utah State Bar.

On February 17, 1988, Smith filed a verified complaint for divorce in the Third District Court, naming himself as plaintiff and his wife, Mary E. Smith, as defendant. He did so because he was experiencing marital problems and because he had developed a platonic relationship with a third party. Approximately one month later, in an effort to "make the appearance that [he] was proceeding with the divorce," Smith forged the signatures of his wife and Elaine Colby, a notary public, on an acceptance of service and waiver. On October 28, 1988, he filed this document with the clerk of the district court and appeared before Judge Scott Daniels to obtain a divorce. Judge Daniels entered the decree of divorce approximately two weeks later and awarded Smith temporary custody of the minor children. Smith did not tell his wife about the divorce decree and continued to reside in the family home with her and their two children.

A few months later, Smith recognized the seriousness of his conduct and disclosed it to

his wife. He told the third party what he had done and terminated his relationship with her. He also confessed to his religious leaders. He then went to Judge Daniels, disclosed his misconduct, and asked for guidance. After several conversations with him and one with Mrs. Smith, Judge Daniels told Smith to draft an order setting aside the divorce decree. The decree was vacated in April 1990, and Judge Daniels took no further action against Smith.

A short time after Smith went to Judge Daniels, Dennis Poole, a former law partner of Smith, discovered what Smith had done and notified the Office of Utah Bar Counsel and the Salt Lake County Attorney's office. The Office of Bar Counsel issued a formal complaint in January 1991, alleging that Smith had forged and filed documents in his own divorce action on two occasions, once in 1983 and again in 1988. In his answer, Smith admitted that he forged his wife's and a notary public's signatures in 1988 but denied any other misconduct.

On October 5, 1990, the county attorney filed an information charging Smith with recording a false or forged instrument, a third degree felony. About two months later, Smith entered a plea of guilty to the charge of attempted recording of a false instrument. He received a suspended sentence of twelve months' confinement and was placed on probation. He was also fined $2000 and required to provide 250 hours of community service. Smith stipulated to bar counsel's amending the disciplinary complaint to include this conviction.

On July 10, 1992, a disciplinary panel held a hearing on the complaint against Smith. Assistant Bar Counsel Wendell Smith submitted the case on his brief and attached exhibits. He did not offer any evidence concerning the alleged misconduct in the 1983 divorce action. In fact, he conceded to the panel that "[t]he only allegations we're going forward with are those that have been admitted in the formal answer." Smith appeared pro se and gave a lengthy statement regarding the facts and his belief that he had shown "good cause" why he should not be disbarred.

Specifically, he described his psychological therapy, his efforts to rectify the ill effects of his conduct, and his pro bono work for the Minority Housing Assistance Program.[1] In response to the panel's inquiry, Smith emphasized that his "discussions with Judge Daniels predated the action by [his] former partner [Dennis Poole]." He also admitted that his conduct constituted a crime of moral turpitude.

Three weeks after the hearing, the panel issued its findings and recommendation of discipline. Despite bar counsel's decision not to pursue the allegations of misconduct in the 1983 divorce action and Smith's denial of that misconduct in his answer, the panel found that "on or about September 28, 1983, [Smith] forged his wife's signature on an Acceptance of Service, notarizing that signature himself." It further found that Smith had forged signatures on the acceptance of service and waiver used in the 1988 divorce action. Finally, the panel determined that Smith's actions violated several Rules of Professional Conduct: rule 3.3(a)(1) ("A lawyer shall not knowingly ... make a false statement of material fact or law to a tribunal."); rule 8.4(b) ("It is professional misconduct for a lawyer to ... [c]ommit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."); rule 8.4(c) ("It is professional misconduct for a lawyer to ... [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation."); and rule 8.4(d) ("It is professional misconduct for a lawyer to ... [e]ngage in conduct that is prejudicial to the administration of justice.").

The panel recommended disbarment, finding that sanction mandatory under rule 23 of the Rules of Integration and Management, which reads in part:

> Except for good cause shown, upon conviction of an attorney of a crime involving moral turpitude by any court, the Supreme Court shall enter a judgment of disbarment against the accused.... The clerk of a Utah state court in which any such conviction is had must, within thirty days

---

1. At the time this case was briefed, Smith had performed more than 400 hours of pro bono work for this organization and had become the chairman of its board of directors.

thereafter, transmit to the Supreme Court a certified copy of the record of conviction, which shall be conclusive evidence thereof. However, the panel also concluded that if disbarment were discretionary under rule 23, it would recommend that Smith be suspended for two years rather than disbarred. The Board of Bar Commissioners affirmed the findings and recommendations of the hearing panel. Smith appeals.

■ We will sustain the findings of the Board "unless they are unsupported by the evidence and are arbitrary and capricious." *In re Calder,* 795 P.2d 656, 657 (Utah 1990). Recommendations for discipline, on the other hand, are " 'advisory' in the sense that they are not and cannot be binding on this court" and will be rejected if unreasonable. *Id.*

■ The finding that Smith forged documents in his 1983 divorce action is not supported by any evidence and is arbitrary and capricious. As explained, Smith denied this allegation of misconduct, and bar counsel admitted to the panel that "the only allegations we're going forward with are those that have been admitted in the formal answer." There simply is no evidence on the record that the 1983 forgery ever occurred; therefore, we set this finding aside.

■ Furthermore, we disagree with the conclusion that disbarment is mandatory under rule 23 of the Rules of Integration and Management. The panel determined that the phrase "except for good cause shown" in the first sentence of the rule "does not mean that a crime involving moral turpitude will not be grounds for disbarment if there are mitigating circumstances." Rather, it reasoned that the phrase applied only when the conviction for a crime of moral turpitude "is challenged or is somehow invalid." Apparently, the panel concluded that Smith could not challenge his conviction because the last sentence of the rule states that a "certified copy of the record of conviction ... shall be conclusive evidence" of the conviction.

Smith argues that the phrase "except for good cause shown" means that unless he "can show good cause why the Supreme Court should not disbar him, he will be disbarred." We agree. Nothing in the rule or our case law supports the panel's distorted and narrow reading of that phrase. As adopted in 1981, rule 32, the precursor of rule 23, mandated disbarment for attorneys convicted of a felony or misdemeanor involving moral turpitude. *In re Jones,* 696 P.2d 1215, 1216 (Utah 1985). Nevertheless, other rules permitted the Board to "exercise its discretion whether to recommend disbarment of an offending attorney." *Id.* Thus, even under rule 32, an attorney convicted of a crime involving moral turpitude was not precluded from presenting "mitigating evidence that would justify discipline short of disbarment." *Id.*

In 1985, rule 32 became rule 23 and was amended to include the phrase "except for good cause shown." Supreme Court Minute Entry 20284, at D–17. Our decision in *In re Disciplinary Action of Davis,* 754 P.2d 63, 65 n. 5, 66 n. 8 (Utah 1988), indicates that, as amended, rule 23 permits an attorney to show mitigating circumstances to justify discipline short of disbarment, despite the fact that he or she had been convicted of a crime involving moral turpitude. In short, disbarment under rule 23 is discretionary.

■ The panel stated that if disbarment were discretionary under rule 23, it would recommend a two-year suspension. Smith's conduct was illegal, and his motives were dishonest. As an experienced attorney, he perpetrated a fraud upon the district court, breaching his duty as an officer of that tribunal and violating several rules of professional conduct. Nevertheless, we find that he has shown good cause why he should not be disbarred and that suspension is a more appropriate sanction. Before his misconduct was discovered, Smith made full and free disclosure to his wife, the third party, and Judge Daniels. He attempted to rectify the consequences of his actions. He has satisfied the terms of the criminal sanctions imposed upon him and has sought psychological counseling to overcome his personal problems. He has no disciplinary record and appears to have maintained a cooperative attitude toward the proceedings. Finally, Smith acknowledged the wrongful nature of his actions before the hearing panel and has dem-

onstrated remorse. The totality of these circumstances mitigate against disbarment.[2]

■ As explained, the Board recommended a two-year suspension as an alternative to disbarment. However, we conclude that in this case a one-year suspension from the practice of law is reasonably "appropriate to the offense" and adequately protects the public. *In re Knowlton,* 800 P.2d 806, 808 (Utah 1990). As a practical matter, even "a short suspension from the practice is sufficient in most cases to destroy an attorney's practice" and is therefore "tantamount to disbarment." *Id.* at 810 n. 5.

The Board's recommendation of discipline is rejected and Smith is suspended from the practice of law for a period of one year.

ZIMMERMAN, C.J., STEWART, A.C.J., and DURHAM and RUSSON, JJ., concur.

2. The mitigating and aggravating circumstances we rely on in determining whether Smith showed good cause for a sanction other than disbarment under rule 23 of the Rules of Integration and Management are now enumerated in rules 6.2 and 6.3 of the Standards for Imposing Lawyer Sanctions (effective July 1, 1993).