*This opinion is subject to revision before final publication in the Pacific Reporter*

**2014 UT 57**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STACEY AUSTIN JOHNSON,
*Petitioner Pro Se,*

*v.*

OFFICE OF PROFESSIONAL CONDUCT, UTAH STATE BAR,
*Respondent.*

No. 20120538
Filed December 12, 2014

Original Proceeding in this Court

Attorneys:

Stacey A. Johnson, Salt Lake City, petitioner pro se

Billy L. Walker, Adam C. Bevis, Salt Lake City, for respondent

JUSTICE PARRISH authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, and JUSTICE LEE joined.

JUSTICE PARRISH, opinion of the Court:

### INTRODUCTION

¶1   This case comes before us on appeal from a final order of the Ethics and Discipline Committee of the Utah Supreme Court (Committee).  The Committee determined that appellant S. Austin Johnson violated rules 1.2, 1.4(a), and 8.4(a) of the Utah Rules of Professional Conduct.  On appeal, Mr. Johnson argues that the Committee's findings were not supported by substantial evidence. We reverse the Committee's determination that Mr. Johnson violated the Utah Rules of Professional Conduct.  And we refer to our rules committee the question of the proper procedure to be followed when a screening panel raises new charges against an attorney following the screening panel hearing.

### BACKGROUND

¶2   Since 2008, Mr. Johnson has represented Neri Alejandro Lopez in various criminal and immigration matters.  Mr. Johnson

was hired by Mirta Parker, Mr. Lopez's mother, to represent Mr. Lopez in obtaining permanent resident status in the United States. To that end, Mr. Johnson prepared and filed an Application to Register Permanent Residence or Adjust Status (Form I-485). Thereafter, Mr. Lopez was interviewed by an officer of the United States Citizenship and Immigration Services (USCIS). During that interview, Mr. Lopez admitted to having pled guilty to possession of drug paraphernalia in 2009.

¶3 Under section 212 of the Immigration and Nationality Act, an "alien convicted of . . . acts which constitute the essential elements of . . . a violation of . . . any law or regulation of a State . . . relating to a controlled substance . . . is inadmissible." 8 U.S.C. § 1182(a)(2)(A)(i). Because Mr. Lopez had pled guilty to possession of drug paraphernalia, he was ineligible for permanent resident status under section 212. However, section 212(h) of the Immigration and Nationality Act permits waiver of previous convictions in the case of applicants who are married to a United States citizen and whose "denial of admission would result in extreme hardship to the United States citizen." *Id.* § 1182(h)(1)(B).

¶4 Mr. Lopez's wife, Christy Lopez, is a United States citizen. When Mr. Lopez's Form I-485 application was denied because of his prior conviction, Mr. Johnson prepared and submitted an Application for Waiver of Grounds of Inadmissibility (Form I-601). In support of Mr. Lopez's Form I-601 application, Mr. Johnson submitted a declaration from Ms. Lopez and documents detailing some of her medical expenses from 2004 and 2007. The declaration was not notarized. In her declaration, Ms. Lopez stated that Mr. Lopez was the only source of financial support for her and the couple's three children.[1] Ms. Lopez also stated that one of the children had health issues, but provided no supporting documentation. USCIS ultimately denied Mr. Lopez's Form I-601 application because it found that he had "failed to provide sufficient evidence that [his] removal would result in extreme hardship to [his] U.S. citizen spouse and children."

¶5 After his Form I-601 application was denied, Mr. Lopez retained another attorney, Gloria Cardenas, to represent him in appealing the denial. Thereafter, Mr. Lopez, Ms. Lopez, and Ms.

---

[1] Two of the children were from Mr. Lopez's previous marriage. But Ms. Lopez stated that she was the children's guardian and considered them her own.

Lopez's father, Craig Franco, attended a meeting in which Mr. Lopez terminated Mr. Johnson as his counsel.[2] As a result of the Form I-601 denial, Mr. Lopez was incarcerated in the Salt Lake County Jail pending deportation. Though Mr. Lopez had previously terminated Mr. Johnson as his counsel, Mr. Lopez's mother met separately with Mr. Johnson and rehired him to obtain Mr. Lopez's release from jail.

¶6 Mr. Johnson visited Mr. Lopez in jail to discuss what needed to be done to obtain Mr. Lopez's release. Mr. Johnson filed a petition for review with the Tenth Circuit Court of Appeals, seeking Mr. Lopez's immediate release from jail pending resolution of the Form I-601 appeal. Mr. Johnson was successful in obtaining a temporary stay, leading to Mr. Lopez's release. Subsequently, Ms. Cardenas was successful in appealing the Form I-601 denial, and Mr. Lopez received permanent resident status.

¶7 Mr. Franco submitted a complaint to the Office of Professional Conduct (OPC), alleging that Mr. Johnson engaged in professional misconduct in his representation of Mr. Lopez. The OPC investigated and determined that Mr. Johnson may have violated a number of the rules of professional conduct. The OPC sent a notice of informal complaint (NOIC) to Mr. Johnson notifying him of the rules that the OPC believed may have been violated.

¶8 First, the OPC indicated that Mr. Johnson may have violated rule 1.1. Rule 1.1 (competence) requires that a lawyer provide competent representation, including legal knowledge, skill, thoroughness, and preparation. The OPC indicated that Mr. Johnson may have violated this rule if he failed to provide the required documentation to support Mr. Lopez's Form I-601 application. Second, the OPC indicated that Mr. Johnson may have violated rule 1.4(a). Rule 1.4(a) (communication) enumerates circumstances when a lawyer must communicate with the client. The OPC indicated that Mr. Johnson may have violated this rule if he failed to adequately communicate with Mr. Lopez regarding the status of Mr. Lopez's Form I-485 application or the need for more information in the Form I-601 application. Third, the OPC indicated that Mr. Johnson may have violated rule 1.16(d). Rule 1.16(d) (termination) requires that upon termination, a lawyer must return the client's property, and specifically the client's file, if requested.

---

[2] The record is unclear whether Mr. Lopez or Mr. Franco actually terminated Mr. Johnson. At a minimum, Mr. Lopez assented to Mr. Johnson's termination.

Mr. Johnson may have violated this rule if he refused to provide Mr. Lopez with a copy of his client file following Mr. Johnson's termination.[3] Finally, the OPC indicated that Mr. Johnson may have violated rule 8.4(a) (misconduct), which specifies that it is professional misconduct to violate any of the Utah Rules of Professional Conduct.[4]

¶9    A screening panel of the Committee held a hearing on the possible violations on March 8, 2012. Based on information that emerged during the hearing, the OPC suggested that the screening panel also consider whether Mr. Johnson violated rule 1.2 (representation), which requires lawyers to adequately explain to their clients the scope of their representation. Ultimately, the screening panel found that Mr. Johnson violated rules 1.2 (representation), 1.4(a) (communication), and 8.4(a) (misconduct) of the Utah Rules of Professional Conduct and recommended that he receive a public reprimand. The screening panel found no basis to conclude that Mr. Johnson had violated rule 1.1 (competence) or rule 1.16(d) (termination).

¶10   The screening panel found that Mr. Johnson violated rule 1.2 (representation) by failing "to adequately explain to [Mr.] Lopez the scope of representation regarding Mr. Lopez's appeal" following Mr. Johnson's initial termination on September 16, 2011. The screening panel stated that "Mr. Lopez seemed confused regarding what work Mr. Johnson was going to continue to perform" following Mr. Johnson's rehiring by Mr. Lopez's mother. The screening panel also found that Mr. Johnson violated rule 1.4(a) (communication) by failing "to adequately communicate with [Mr. Lopez] regarding the status of his immigration application [and] the need for additional information" to complete the Form I-601

---

[3] Mr. Franco alleged in his initial complaint that Mr. Johnson refused to provide Mr. Lopez with a copy of his client file. But Mr. Lopez testified that he received his client file within two days of requesting it. Because the screening panel did not find that Mr. Johnson withheld Mr. Lopez's client file, this issue is not before us on appeal.

[4] A violation of rule 8.4(a) based solely on an attorney's violation of another rule will not be considered a separate violation. UTAH R. PROF'L CONDUCT 8.4 cmt. 1a. Rule 8.4(a) is more properly thought of as a bridge to the Standards for Imposing Lawyer Sanctions and allowing imposition of the appropriate discipline pursuant to rule 14-605 of the Supreme Court Rules of Professional Practice. *Id.*

application. The screening panel further found that Mr. Johnson violated rule 8.4(a) (misconduct) by violating rules 1.2 (representation) and 1.4(a) (communication).

¶11 The screening panel determined that Mr. Johnson was negligent when he violated the specified rules but that his behavior caused "no injury or harm to the client." Nevertheless, the screening panel recommended that Mr. Johnson receive a public reprimand because of his "repeated misconduct and lack of communication, thoroughness and diligence in his representation of clients demonstrated by his repeated offenses." Finally, the screening panel expressly found that Mr. Johnson's prior record of discipline constituted an aggravating factor.

¶12 Mr. Johnson filed an exception to the screening panel's findings in accordance with rule 14-510 of the Supreme Court Rules of Professional Practice (Rules). In his exception filing, Mr. Johnson introduced, for the first time, documents detailing the scope of his representation of Mr. Lopez. These documents included a signed retainer agreement between Mr. Lopez and Mr. Johnson; a signed letter from Mr. Lopez to Ms. Cardenas, which limited Ms. Cardenas's representation solely to the Form I-601 appeal; and copies of handwritten notes from a meeting between Mr. Johnson and Mr. Lopez, wherein they discussed the representation.

¶13 The Chair of the Ethics and Discipline Committee of the Utah Supreme Court (Chair) is responsible for ruling on any exception to the screening panel's determinations. After reviewing Mr. Johnson's case, the Chair issued a ruling on the exception on May 21, 2012. The Chair affirmed the screening panel's findings, concluding that Mr. Johnson failed to carry his burden of showing that the screening panel's findings were not supported by substantial evidence, or were arbitrary or capricious, legally insufficient, or otherwise clearly erroneous. *See* SUP. CT. R. PROF'L PRACTICE 14-510(d)(3). Mr. Johnson appeals from the Chair's ruling. We have jurisdiction pursuant to section 78A-3-102(3)(c) of the Utah Code.

## STANDARD OF REVIEW

¶14 A party seeking review of the Committee's decision bears the burden of establishing that the Committee's action was (1) based on a factual determination not supported by substantial evidence, (2) an abuse of discretion, (3) arbitrary or capricious, or (4) contrary to the Rules. SUP. CT. R. PROF'L PRACTICE 14-510(f)(5). We presume that the Committee's findings of fact are correct, unless we

determine that such findings are arbitrary, capricious, or in plain error. *In re Discipline of Babilis*, 951 P.2d 207, 213 (Utah 1997). Nevertheless, in light of our constitutional mandate and "the unique nature of disciplinary actions and our knowledge of the nature of the practice of law," "we reserve the right to draw inferences from basic facts which may differ from the inferences drawn by the [Committee]." *In re Knowlton*, 800 P.2d 806, 808 (Utah 1990). As such, our "review of attorney discipline proceedings is fundamentally different from judicial review of administrative proceedings or of other district court cases." *Id.* "We need not, therefore, defer to the [Committee] in deciding what may constitute appropriate discipline." *Id.*

## ANALYSIS

¶15 On appeal, Mr. Johnson asks that we reverse the Committee's finding that he violated rules 1.2 (representation), 1.4(a) (communication), and 8.4(a) (misconduct) of the Utah Rules of Professional Conduct. Specifically, Mr. Johnson argues that the Committee's findings were not supported by substantial evidence.[5] Upon reviewing the entire record, we agree with Mr. Johnson and therefore reverse. We also refer the question of the procedure to be followed when an attorney is confronted with charges at a screening panel hearing of which he or she had no prior notice to our rules committee.

### I. THE COMMITTEE'S FINDING THAT MR. JOHNSON VIOLATED RULE 1.4(a) (COMMUNICATION) IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

¶16 The screening panel concluded that Mr. Johnson violated rule 1.4(a) (communication) by "failing to adequately communicate with [Mr. Lopez] regarding the status of his immigration application or the need for additional information." The Chair concluded that the screening panel's finding was supported by substantial evidence because it found that the record contained evidence that Mr. Johnson "failed to supply various necessary information" in Mr. Lopez's immigration application.

---

[5] Mr. Johnson also argues that the Committee's findings were an abuse of discretion, arbitrary and capricious, and contrary to our rules of professional practice. Because we agree that the Committee's findings were not supported by substantial evidence, we need not address Mr. Johnson's other arguments.

¶17 At the screening panel hearing, Mr. Lopez testified that there were times that Mr. Johnson did not promptly return phone calls, but he could not recall how many calls were not returned.[6] Mr. Lopez also testified that Mr. Johnson failed to deliver his client file in a timely manner. But the screening panel did not make any findings of fact as to whether Mr. Johnson did or did not return phone calls or whether he promptly returned Mr. Lopez's client file. Rather, the screening panel's only factual determination supporting its finding that Mr. Johnson had violated rule 1.4 (communication) was that "Mr. Johnson failed to adequately communicate with his client regarding the status of his immigration application or the need for additional information." Similarly, the Chair's determination that Mr. Johnson had violated rule 1.4(a) (communication) was based solely on the fact that Mr. Johnson had failed to properly communicate with his client "so as to obtain the information and documents that are necessary properly to process the client's request for relief from an agency." And in its briefing in this court, the OPC similarly focused on Mr. Johnson's alleged failure to communicate with Mr. Lopez "to make sure that [Mr.] Johnson had all the information and supporting documents that would have given the [I-601 waiver] application a chance at success." Though a failure to adequately investigate a client's claim and to collect the documentation necessary to support that claim are serious matters, rule 1.4 (communication) is not the appropriate vehicle for addressing such behavior.

¶18 Rule 1.4 of the Utah Rules of Professional Conduct states:

(a) A lawyer shall:

(a)(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent . . . is required by these Rules;

(a)(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

---

[6] Ms. Lopez also testified at the screening panel hearing that Mr. Johnson did not return her phone calls. However, she was not Mr. Johnson's client. For the purposes of rule 1.4 (communication), we are only concerned with an attorney's communications with a client. Any communication breakdown between Ms. Lopez and Mr. Johnson, while regrettable, is irrelevant to whether Mr. Johnson violated rule 1.4 (communication).

(a)(3) keep the client reasonably informed about the status of the matter;

(a)(4) promptly comply with reasonable requests for information; and

(a)(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Thus, the rule's focus is on ensuring that clients are adequately informed about the status of their case and are included in the decision-making process. Both the language of the rule and our caselaw focus on the flow of information from the attorney to the client. *See Utah State Bar v. Jardine (In re Discipline of Jardine)*, 2012 UT 67, ¶ 60, 289 P.3d 516. There is nothing in the language of the rule to suggest that it is violated when an attorney fails to investigate a client's claim, even if that failed investigation was due to some failure of communication between the lawyer and the client.

¶19 The appropriate rule under which to reprimand an attorney for failure to adequately investigate a client's claim is rule 1.1 (competence), which requires an attorney to employ the "legal knowledge, skill, *thoroughness* and *preparation* reasonably necessary for the representation." UTAH R. PROF'L CONDUCT 1.1 (emphases added). But in this case, the screening panel was expressly asked to consider whether Mr. Johnson violated rule 1.1 (competence) and declined to find that he did so. Rule 1.4 (communication) cannot be used to punish conduct covered by rule 1.1 (competence), especially when the screening panel did not find a violation of rule 1.1. We conclude the Committee's determination that Mr. Johnson violated rule 1.4 (communication) is not supported by substantial evidence. We therefore vacate the Committee's ruling and accompanying sanction.

## II. THE COMMITTEE'S FINDING THAT MR. JOHNSON VIOLATED RULE 1.2 (REPRESENTATION) WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

¶20 The Committee found that Mr. Johnson violated rule 1.2 (representation) of the Utah Rules of Professional Conduct by failing

to adequately explain the scope and objectives of his representation to Mr. Lopez. In relevant part, rule 1.2 states:

> (a) . . . [A] lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. . . .
>
> . . . .
>
> (c) A lawyer may limit the scope of representation if the limitation is reasonable under the circumstances and the client gives informed consent.

The screening panel found that Mr. Johnson failed to properly explain the scope of his representation to Mr. Lopez after Mr. Johnson was rehired. The screening panel stated, "Mr. Lopez seemed confused regarding what work Mr. Johnson was going to continue to perform." The screening panel relied on documentary evidence and testimony from Mr. Lopez, Ms. Lopez, Mr. Franco, and Mr. Johnson in reaching its conclusion.

¶21 But the original NOIC sent by the OPC did not indicate that it believed Mr. Johnson had violated rule 1.2 (representation). Instead, the NOIC only mentioned rules 1.1 (competence), 1.4 (communication), and 1.16 (termination). Based on evidence that emerged during the screening panel hearing, the OPC suggested that the screening panel also consider whether Mr. Johnson may have violated rule 1.2 (representation). Thus, Mr. Johnson did not have advance notice that the screening panel would be considering a rule 1.2 (representation) violation.

¶22 At the exception stage, Mr. Johnson submitted new documentary evidence demonstrating that Mr. Lopez was fully informed as to the scope of representation. First, Mr. Johnson submitted a client retainer agreement. In this agreement, Mr. Lopez retained Mr. Johnson "for representation with regard to . . . 10th Cir. Petition for Review of Order of Deportation and Temporary Stay of Removal." Second, Mr. Johnson submitted a letter from Mr. Lopez to Ms. Cardenas.[7] The letter stated:

> Dear Gloria:
>
> I am writing to inform you that I am limiting you as

---

[7] Portions of the letter were typewritten. Other parts were handwritten, and it was signed by Mr. Lopez.

> my attorney of representation on my immigration matter. Mr. S. Austin Johnson will from now on handle my immigration case. Thank you for your service. I expect you to continue to represent me in my appeal of the denial of the [Form] I-601 to the AAO. But Mr. Johnson will represent me in all other immigration matters.

Mr. Johnson also submitted copies of his hand-written notes taken when he visited Mr. Lopez in jail and discussed what was needed to get Mr. Lopez released.

¶23 Because Mr. Johnson did not request a hearing at the exception stage, the Chair reviewed the screening panel's findings only in light of the evidence before the screening panel. While the Chair acknowledged the new evidence presented by Mr. Johnson at the exception stage, he did not consider that evidence in reaching his conclusion. Instead, the Chair simply considered whether the screening panel had sufficient evidence to make its findings at the time it made them. The Chair concluded that the screening panel did have sufficient evidence before it and therefore affirmed the screening panel's findings that Mr. Johnson violated rule 1.2 (representation). But the new documentary evidence submitted by Mr. Johnson demonstrates that Mr. Lopez was fully informed as to the scope of the representation. Had that evidence been before the screening panel—or had the Chair considered it—it is difficult to believe that they would have found a violation of rule 1.2 (representation).

¶24 The difficulty in this case stems from the preliminary nature of the NOIC and the investigatory nature of the screening panel hearing, combined with the procedures for appeal outlined in rule 14-510. Screening panel findings can be appealed to the Chair; this appeal is known as an exception. Rule 14-510(d)(2) allows a respondent to augment the record before the screening panel if he or she requests a hearing at the exception stage. However, rule 14-510(d)(1) provides, "If no hearing is requested, the committee chair will review the record compiled before the screening panel." Read together, subsections (d)(1) and (d)(2) imply that a respondent may supplement the screening panel record only if he first requests a hearing at the exception stage. And if the respondent does not request a hearing, the Chair appears to have no discretion to consider newly submitted evidence.

¶25 This procedure is troubling in cases like Mr. Johnson's, where the screening panel considers possible rule violations of

which the attorney had no notice. In such cases, the screening panel may make factual findings adverse to an attorney without the attorney having been given the opportunity to prepare and gather relevant evidence. In short, the preliminary nature of the NOIC and the screening panel's dual role as both investigator and fact finder raise both due process and efficiency concerns.

¶26    Attorneys are entitled to due process in disciplinary proceedings, including "adequate notice of the charges and an opportunity to be heard in a meaningful way." *Long v. Ethics & Discipline Comm. of the Utah Supreme Court*, 2011 UT 32, ¶ 29, 256 P.3d 206 (internal quotation marks omitted). "[T]he procedures listed in the [Rules] are sufficient to afford due process," *id.*, because the Rules allow an attorney to present new evidence at an exception hearing or on appeal to this court. SUP. CT. R. PROF'L PRACTICE 14-510(d)(2), (f)(5)(A). Nonetheless, procedural fairness dictates that an attorney charged with misconduct have an opportunity to rebut charges at the screening panel stage before the heightened standard of review upon appeal is imposed. We are troubled by the fact that in cases like this, an attorney does not have the opportunity to present evidence in his favor until after the screening panel has already made its determination. And although the attorney may file an exception or appeal to this court, he or she is then laboring under the burden of showing that the "determination or recommendation of the screening panel is unsupported by substantial evidence or is arbitrary, capricious, legally insufficient, or otherwise clearly erroneous." *Id.* 14-510(d)(3).

¶27    The possibility of new charges arising during a screening panel hearing raises doubts as to the structure of the appeal procedures within our Rules. Requiring an accused lawyer to either request a hearing at the exception stage or pursue an appeal to this court in order to present evidence responsive to charges raised during a screening panel hearing is wholly inefficient. *See Long*, 2011 UT 32, ¶ 36 (recognizing that the informal screening panel system was "designed to promote speed and efficiency in low-level attorney discipline cases").

¶28    Mr. Johnson's case demonstrates this problem precisely. Mr. Johnson received a NOIC informing him that the OPC thought he might have violated rules 1.1 (competence), 1.4 (communication), and 1.16(d) (termination). There was no mention of rule 1.2 (representation) as a possible violation until during the screening panel hearing. As a result, Mr. Johnson was unprepared during the hearing to defend himself against the charge that he failed to explain

the scope of his representation to Mr. Lopez. And Mr. Johnson's lack of preparation was completely predictable, given his lack of notice that the screening panel had any concerns related to his compliance with rule 1.2 (representation). Mr. Johnson then submitted responsive evidence at the exception stage, but the Chair was unable to consider it. Thus, Mr. Johnson was required to appeal to this court in order to obtain the opportunity to have us consider evidence for the first time that should have been considered by the screening panel before it found that Mr. Johnson had committed professional misconduct.

¶29 After reviewing the entire record, we conclude that Mr. Johnson fully informed Mr. Lopez as to the scope of his representation. Accordingly, we hold that the Committee's finding that Mr. Johnson violated rule 1.2 (representation) was not supported by substantial evidence. And because of our concerns about procedural fairness and efficiency, we refer the issue of how to handle new charges arising out of screening panel hearing to our rules committee and instruct it to propose changes to the Rules to address these concerns.

## CONCLUSION

¶30 The Committee's findings that Mr. Johnson violated rules 1.2 (representation), 1.4(a) (communication), and 8.4(a) (misconduct) were not supported by substantial evidence. Rule 1.4(a) (communication) cannot be used to reprimand an attorney for behavior properly covered by other rules. And Mr. Johnson's evidence demonstrates that he did not violate rule 1.2 (representation) because he explained the scope of representation to his client. Finally, Mr. Johnson did not violate rule 8.4 (misconduct) because that violation was based solely on his violation of the other two rules. We therefore reverse the Committee's determination that Mr. Johnson violated the Utah Rules of Professional Conduct.