**SIGMA–TAU INDUSTRIE FARMA-CEUTICHE RIUNITE, S.p.A., et al., Plaintiffs,**

v.

**LONZA, LTD., Defendant.**

Civil Action No. 970562JHG/DAR.

United States District Court, District of Columbia.

Feb. 23, 1999.

Jean–Paul Lavalleye, Jeffrey Bayne McIntyre, Christina Miriam Gadiano, Norman F. Oblon, Richard D. Kelley, Catherine B. Richardson, J. Derek Mason, Oblon, Spivak, McClelland, Maier & Neustadt, Arlington, VA, for Sigma–Tau Industrie Farmaceutiche Riunite, S.P.A. Biosint, S.P.A.

Douglas P. Lobel, Kelley, Drye & Warren, L.L.P., Washington, DC, David Francescani, Joseph Robinson, Maryann Hayes, Bert J. Lewen, James E. Hanft, David R. Francesani, Darby & Darby P.C., New York City, Daniel R. Schechter, Darby & Darby, P.C., New York City, for Lonza, Ltd.

### MEMORANDUM ORDER

DEBORAH ANN ROBINSON, United States Magistrate Judge.

This is a declaratory judgment action in which plaintiffs seek a determination that U.S. Patent No. 5,073,376 (the "L-carnitine L-tartrate patent" or the " '376 patent") is invalid and not infringed by virtue of a product which plaintiffs manufacture and sell in Europe, but have not sold in the United States since 1996. During the course of discovery, plaintiffs took the deposition of Stephen Blum, a co-inventor of U.S. Patent No. 5,030,657 (the "catfish pat-

ent") and, at the time of the deposition, an employee of defendant.

After the close of discovery, plaintiffs sought leave to reopen discovery and to redepose Mr. Blum and conduct follow-up discovery with respect to his corrections of his deposition testimony. *See* Plaintiffs' Motion for Leave to Reopen Discovery to Redepose Stephen Blum and Conduct Discovery of Matters Raised Therein. By an Order entered on July 27, 1998, the trial court granted the motion. The trial court found that "Mr. Blum did not respond accurately and completely to the questions posed at his deposition[,]" and that "the significantly different answers now proposed by Mr. Blum ... [are] ample justification for plaintiffs' request to re-depose Mr. Blum." July 27, 1998 Order at 2. By the same Order, the trial court referred to the undersigned any disputes between the parties regarding the reasonableness of the follow-up discovery. July 27, 1998 Order at 3. In a subsequent Order, the trial court referred to the undersigned for resolution the plaintiffs' allegations that defense counsel caused the re-deposition by instructing Mr. Blum to lie, to withhold information and not to correct his original deposition testimony. September 16, 1998 Order at 2; *see* Plaintiffs' Supplemental Opposition to Defendant's Motion for Partial Reconsideration of the Order Granting Leave to Reopen Discovery to Re–Depose Stephen Blum and Conduct Discovery of Matters Raised Therein at 2–3.

## I.

These and other allegations of misconduct by both defendant and its counsel are the subject of Plaintiffs' Motion to Compel Production of Withheld Documents and Testimony Under the Crime–Fraud Exception to the Attorney–Client Privilege and Work Product Immunity Doctrine (Docket No. 117). In the memorandum in support of the motion, plaintiffs maintained that the testimony of Mr. Blum when he was re-deposed "revealed a shocking patter of fraud and deceit by defendant and defense counsel[.]" Plaintiffs' Memorandum in Support of Their Motion to Compel Production of Withheld Documents and Testimony Under the Crime–Fraud Exception to the Attorney–Client Privilege and Work Product Immunity Doctrine ("Plaintiffs' Memorandum in Support of Motion") at 1. More specifically, plaintiffs alleged (1) that defendant and its counsel, Bert Lewen and David Francescani, "forced" Mr. Blum to lie when he was first deposed; (2) that Mr. Lewen should have known that Mr. Blum was providing inaccurate answers when he was first deposed, but never "instructed" Mr. Blum to correct his answers; and (3) that Mr. Lewen and an associate, Maryann Hayes, "denied [Mr. Blum] the opportunity" to correct his testimony when he appealed to them for assistance in doing so. Plaintiffs' Memorandum in Support of Motion at 1–2. Plaintiffs maintained that Mr. Blum's testimony "provides ... a *prima facie* case to seek the abrogation of the attorney-client privilege and the work-product immunity in this case as it relates to the preparation, prosecution, enforcement and/or defense of [the '376 patent] and any foreign counterparts thereof." Plaintiffs' Memorandum in Support of Motion at 2. In its opposition to plaintiffs' motion to compel, defendant characterized Mr. Blum's allegations as "totally untrue[,]" and part of "the ever-changing testimony of a disgruntled ex-employee under psychiatric care and under the influence of psycho-active medication[.]" Defendant's Memorandum in Opposition to Plaintiffs' Motion to Compel Production of Documents and Testimony Under the Crime–Fraud Exception and in Support of Defendant's Cross Motions for a Pretrial Conference to Resolve the Issues Raised by the Blum Deposition and for a Protective Order ("Defendant's Opposition to Motion") at 1. However, defendant conceded that the allegations were "sufficiently serious that they must be resolved prior to trial[,]" and sought a pretrial conference at which a procedure for resolution of the allegations could be established. Defendant's Opposition to Mo-

tion at 2–3. Plaintiffs subsequently joined in defendant's request for a pretrial conference to establish a procedure for exploring the allegations of fraud raised by Mr. Blum. *See* Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion to Compel Production of Withheld Documents and Testimony Under the Crime–Fraud Exception and Plaintiffs' Response to Defendant's Cross Motions for a Pretrial Conference to Establish a Procedure to Resolve the Issues Raised by the Blum Deposition and for a Protective Order at 2.

Counsel for the parties appeared before the undersigned for the conference on September 23, 1998. The parties' agreement regarding the extent and scope of discovery, as well as the identities of the witnesses who would appear for the hearing on plaintiffs' motion to compel, was included in a proposed order prepared by counsel for the parties, and signed by the undersigned. *See* September 23, 1998 Order Regarding the Extent and Scope of Discovery Related to Plaintiffs' Motion to Compel Production of Withheld Documents and Testimony Under the Crime–Fraud Exception. The parties were directed to file pre-hearing memoranda on December 4, 1998, and the hearing on plaintiffs' motion to compel was scheduled for December 10, 1998. The parties jointly requested, and the undersigned allowed, one brief extension of discovery. *See* October 27, 1998 Order. The parties also agreed to the format for the exchange of exhibits and order of witnesses at the hearing. *See* December 9, 1998 Consent Order Regarding the Format for the Hearing Before the Court on December 10–11, 1998.

In their pre-hearing memoranda, the parties, relying largely upon the testimony and other evidence obtained during the discovery conducted in accordance with the undersigned's September 23, 1998 Order, urged varying interpretations of such evidence. Plaintiffs alleged (1) that Mr. Lewen committed fraud on this Court when he failed to advise Mr. Blum to correct his testimony or to advise this Court of Mr. Blum's perjury; and (2) that Mr. Lewen committed an additional act of fraud on this Court by taking a position regarding the patentability of the catfish patent which he knew was incorrect. *See* Plaintiffs' Memorandum of Law Regarding Discovery Relating to the Issue of Fraud on the Court ("Plaintiffs' Pre–Hearing Memorandum") at 8–17. Plaintiffs maintained that the discovery obtained with respect to those allegations—particularly the testimony of Mr. Blum—"presents a *prima facie* case of fraud on this Court sufficient to pierce the attorney-client privilege." Plaintiffs' Pre–Hearing Memorandum at 17.

Defendant, on the other hand, alleged that "Blum ... has changed his story so many times that it literally requires a score card to keep track of his current story." Defendant Lonza Ltd.'s Pre–Hearing Memorandum on the Fraud on the Court Issue ("Defendant's Pre–Hearing Memorandum on the Fraud on the Court Issue") ("Defendant's Pre–Hearing Memorandum") at 2. Defendant maintained that none of the evidence elicited during the pre-hearing discovery supported any of Mr. Blum's allegations. Defendant claimed the evidence showed (1) that no one ever told Mr. Blum to lie, nor "prepared" him for his deposition in the manner he alleged; and (2) that Mr. Blum was "perfectly satisfied" with his deposition answers, and considered making only one minor change until his negotiations with Lonza, Inc. regarding his continued employment broke down. Defendant's Pre–Hearing Memorandum at 2–3. Defendant conceded that based upon "the initial bare showing of Blum's testimony[,]" the Court "properly granted the upcoming hearing to give [it] an opportunity to present evidence." However, defendant argued that the initial showing was "insufficient to [demonstrate] that the [crime-fraud] exception applies[.]" Defendant's Pre–Hearing Memorandum at 7. Defendant disputed plaintiffs' contention that a

*prima facie* showing would satisfy plaintiffs' burden of proof, and argued that instead, "plaintiffs must submit evidence 'that if believed by the trier of fact would establish the elements of an ongoing or imminent crime or fraud.'" Defendant's Pre–Hearing Memorandum at 8.[1]

## II.

Against this backdrop, the hearing on plaintiffs' motion to compel commenced. During the course of five days, the undersigned heard testimony from six witnesses—including Mr. Blum and Mr. Lewen—and reviewed 84 exhibits, 58 of which were received into evidence. At the conclusion of the hearing, counsel for the parties met and conferred in accordance with the undersigned's order. In the written report of their conference, plaintiffs identified seven acts which they allege are relevant to their allegations of fraud, all involving conduct by Mr. Lewen with respect to Mr. Blum. *See* Stipulations of the Parties Regarding Issues Before the Court as a Result of the Hearing Pertaining to Plaintiffs' Motion to Compel Production of Documents ("Stipulations") at 3–4. Plaintiffs withdrew their allegations of fraud against Mr. Francescani and Ms. Hayes, as well as the various officers and employees of Lonza, Inc. and Lonza AG against whom such allegations were initially made.[2] Stipulations at 4. Plaintiffs also withdrew their allegation that Mr. Lewen committed an act of fraud

by taking a position he knew to be incorrect.[3] Stipulations at 5.

However, the parties were unable to agree as to the burden of proof necessary to invoke the crime-fraud exception to the attorney-client and work product privileges.[4] Plaintiffs maintained that a *prima facie* showing of fraud was sufficient. *See* Stipulations at 2. Defendant, on the other hand, maintained that plaintiffs' burden is to prove fraud on the Court by clear and convincing evidence. Stipulations at 3.

After the closing arguments of counsel, the undersigned directed counsel to submit written memoranda on the single "relevant act" as to which the evidence offered was subject to varying interpretations: whether Mr. Lewen had knowledge that Mr. Blum was testifying falsely when he was initially deposed.[5] Plaintiffs identified five deposition questions to which they contend Mr. Blum gave answers Mr. Lewen knew to be false. *See* Plaintiffs' Post–Hearing Submission at 4–10. Defendant maintained that Mr. Blum's December 16, 1997 deposition testimony was "basically accurate[,]" and that even if he lied at that time, plaintiffs failed to prove by clear and convincing evidence that Mr. Lewen knew the testimony was false. *See* Defendant's Memorandum in Response to Plaintiffs' Post Hearing Submission at 2–3. The parties agree that in the context of Rule 3.3(a)(4) of the D.C. Rules of Professional Conduct,[6] "false" means "willfully stating

---

1. Foreshowing the issue to which emerged as the most significant contested one, defendant observed that "courts have yet to define [the] quantum of proof, but have noted that it is a higher standard of proof than that needed to gain *in camera* review." Defendant's Pre–Hearing Memorandum at 7.

2. *See* Plaintiffs' Memorandum in Support of Motion at 2–4; Plaintiffs' Pre–Hearing Memorandum at 4, 9–10.

3. *See* Plaintiffs' Memorandum in Support of Motion at 4; Plaintiffs' Pre–Hearing Memorandum at 16–17.

4. *See* n. 1, *supra.*

5. The remaining "relevant acts" concern Mr. Lewen's participation in a review of documents at Mr. Blum's home, and Mr. Lewen's preparation of Mr. Blum for his December, 1997 deposition. *See* Stipulations at 3. As to those alleged relevant acts, the undersigned deemed Mr. Blum's testimony so riddled with inconsistencies that further consideration of them was unwarranted. Indeed, plaintiffs had already withdrawn some of the claims on which these allegations were based. Stipulations at 4–5; *see* n. 2, n. 3, *supra,* and accompanying text.

6. Rule 3.3 provides, in pertinent part, that;
   (a) A lawyer shall not knowingly:
   (1) Make a false statement of material fact or law to a tribunal;

any material matter which the witness does not believe to be true." Plaintiffs' Post–Hearing Submission at 3; Defendant's Memorandum in Response to Plaintiffs' Post Hearing Submission at 4.

### III.

Upon consideration of the evidence offered at the hearing, the oral arguments of counsel, the parties' written submissions and the entire record herein, the undersigned finds that no credible evidence was offered in support of plaintiffs' allegations that Mr. Lewen, through his participation in either the document review at Mr. Blum's home or the preparation of Mr. Blum for the December, 1997 deposition, committed any fraud on the Court. *See* Stipulations at 3, Section IV, Relevant Acts 1–2.[7]

With respect to the alleged relevant acts regarding whether Mr. Lewen knew Mr. Blum testified falsely at his December, 1997 deposition but failed to correct the record, assist Mr. Blum in making corrections to the record or otherwise disclose the perjury, the undersigned finds that plaintiffs have failed to demonstrate that Mr. Blum offered any testimony at that deposition which was false. *See* Stipulations at 3–4, Section IV, Relevant Acts 3–7. Plaintiffs identify five deposition responses as the "false testimony" which Mr. Blum allegedly offered. *See* Plaintiffs' Post–Hearing Submission at 4–11. However, the undersigned finds that with one exception, the "corrected" answers are not responsive to the questions which were asked. For example, Mr. Blum, at the December, 1997 deposition, said that he

had not "interacted" with Willibald Kohl "in the area of carnitine"; in his "corrected" answer, he described a series of business meetings in which they both participated. However, no "interaction" with Kohl "in the area of carnitine" was demonstrated by Mr. Blum in his hearing testimony, and Dr. Kohl directly contradicted such assertion. December 11, 1998 Tr. 163:11–19; 163:20–165:16; *see* Defendant's Memorandum in Response to Plaintiffs' Post Hearing Submission at 7–10. The undersigned therefore finds that the "corrected" answers to the first four questions which plaintiffs identify are non-responsive comments offered gratuitously by Mr. Blum, and not attempts to correct testimony which he knew to be false.[8]

With respect to Mr. Blum's single "corrected" answer which was responsive to the question asked—whether he knew if Lonza, Inc. sold carnitine tartrate—the undersigned cannot find that Mr. Lewen knew that Mr. Blum was intentionally giving false testimony. While Mr. Lewen testified at the hearing that he was "surprised" by Mr. Blum's answer, such surprise does not, in and of itself, constitute actual knowledge that the testimony is false. Indeed, "[m]ere suspicion or inconsistent statements ... are insufficient to establish that the ... testimony [is] false." *In re Grievance Committee of the United States District Court, District of Connecticut*, 847 F.2d 57, 63 (2d Cir.1988) (*quoting Whiteside v. Scurr*, 744 F.2d 1323, 1328 (8th Cir.1984)); *see Witherspoon v. United States*, 557 A.2d 587, 592 n. 3 (D.C.1989) (counsel must have a "firm factual basis" for believing his client wishes to testify

(2) Counsel or assist a client to engage in conduct that the lawyer knows is criminal or fraudulent...;
...
(4) Offer evidence that the lawyer knows to be false....

7. *See* n. 5, *supra.* Even if Mr. Blum's hearing testimony is credited, it demonstrates only that Mr. Lewen segregated documents which were not responsive to plaintiffs' requests for production from the documents which were,

and that he gave Mr. Blum what plaintiffs appear to concede were standardized instructions governing the conduct of a witness at a deposition.

8. *See* Defendant's Memorandum in Response to Plaintiffs' Post Hearing Submission at 2–3. The undersigned makes no finding herein with respect to the reason Mr. Blum changed portions of his December, 1997 deposition testimony.

falsely before taking measures to prevent the presentation of perjured testimony).

Plaintiffs rely solely upon *Mackler Prods., Inc. v. Turtle Bay Apparel Corp.*, No. 92 Civ. 5745, 1997 WL 269505, 1997 U.S. Dist. LEXIS 7075 (S.D.N.Y. May 21, 1997), *vacated on other grounds*, 146 F.3d 126 (1998), in support of their contention that Mr. Lewen's surprise is a sufficient basis upon which to find that he knew Mr. Blum's testimony was false. *See* Plaintiffs' Post–Hearing Submission at 3 n. 1. However, the *Mackler* court found that the witness had been instructed by counsel to give false testimony. *Mackler*, 1997 WL 269505, *12, 1997 U.S. Dist. LEXIS 7075, at *14. As the evidence does not support such a finding here,[9] the undersigned finds that plaintiffs' reliance on *Mackler* is misplaced.

Even assuming, *arguendo*, that Mr. Blum willfully offered false testimony during his December, 1997 deposition, the undersigned finds that plaintiffs have not shown that Mr. Lewen knew that Mr. Blum's testimony was false. The requisite "quantum of proof" which would apply to such a showing has not been articulated by either the Supreme Court or this Circuit;[10] given its finding that Mr. Blum did not willfully offer false testimony, the undersigned will not endeavor to do so here. However, it is evident that the quantum of proof is more that the initial showing which plaintiffs made as a part of their Motion for Leave to Reopen Discovery to Redepose Stephen Blum and Conduct Discovery of Matters Raised Therein. *In re Sealed Case*, 107 F.3d 46, 50 n. 6 (D.C.Cir. 1997) (distinguishing between showing of a "factual basis adequate to support a good faith belief by a reasonable person" warranting *in camera* review, and "evidence to establish the claim that the crime-fraud exception applies"); *see United States v. Zolin*, 491 U.S. 554, 563 n. 7, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989); *In re General Motors Corp.*, 153 F.3d 714, 716–717 (8th Cir.1998); *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 96 (3rd Cir.1992); *Laser Industries Ltd. v. Reliant Technologies, Inc.*, 167 F.R.D. 417, 439–440 (N.D.Cal. 1996).[11]

Measured by any standard higher than their initial showing, plaintiffs have failed to prove that Mr. Lewen committed any fraud on this Court. Instead, the undersigned finds that Mr. Lewen never directed Mr. Blum to testify falsely; had no knowledge that any testimony offered by Mr. Blum was false; and had no reason to believe that Mr. Blum would testify falsely.

## IV.

**ORDERED** that Plaintiffs' Motion to Compel Production of Withheld Documents and Testimony Under the Crime–Fraud Exception to the Attorney–Client Privilege and Work Product Immunity Doctrine (Docket No. 117) be, and the same hereby is **DENIED.**

---

9.  *See* n. 7, *supra.*

10.  *See* n. 1, *supra.*

11.  The trial court, in ruling on plaintiffs' Motion for Leave to Reopen Discovery to Redepose Stephen Blum and Conduct Discovery of Matters Raised Therein, found only that Mr. Blum's "significantly different answers" were "ample justification for plaintiffs' request to re-depose Mr. Blum." July 27, 1998 Order at

2. Making the same distinction between the initial showing of a factual basis, and evidence which would warrant a finding that the crime-fraud exception applies, the trial court treated the allegations of attorney misconduct as "a separate matter entirely, to be addressed .... in the hearing ... on plaintiffs' motion to compel discovery." September 16, 1998 Order at 2.